MARY A. McCAFFERTY, THOMAS A. FLINN, HARRY SILFIES, minor, by Frank Burke, his next friend, and THOMAS FLINN,

*vs.*

JOHN F. FLINN.

*New Castle, July* 30, 1924.

Written declaration of trust executed by defendant grantee of a lot and in which he admits that the lot conveyed to him is held in trust for complainants and that the consideration was paid by his mother, *held* conclusive against him.

Generally, where one pays consideration for real estate, but title is taken in name of another, equity regards latter as resulting trustee for former, on theory that payment of valuable consideration draws to it beneficial ownership.

Where person who supplies consideration for purchase of land stands towards grantee in the relation of parent or in *loco parentis*, general rule by which resulting trust would otherwise be created, in absence of statute, does not apply, it being rebuttably presumed in such case that intention was to make advancement to child.

Neither a mother nor father is under a legal obligation to provide and maintain an adult child.

The presumption of a gift or advancement from one who stands toward grantee in relation of parent or in *loco parentis*, does not rest upon an obligation to maintain and support; it rests rather upon natural love and affection and arises without regard to the sex of the grantor.

Where title to land for which the mother paid the consideration was placed in her adult son, such conveyance *held* rebuttably presumed a gift or advancement to son.

Testimony that mother, after paying consideration for lot and placing legal title in her adult son, said, in response to question, that she did that because she did not want her husband to get hold of the property and squander it, *held* insufficient to rebut presumption that conveyance to son was gift or advancement.

Where mother paid consideration for lot deeded to adult son, statement made by her after sale, in response to question, that she deeded lot to son because she did not want her husband to get hold of property and squander it, *held* not admissible to rebut presumption of gift or advancement to son, because not contemporaneously made.

Complainants, as beneficiaries, *held* entitled to a decree authorizing an accounting against defendant for reasonable rent for occupation of mortgaged property held in trust for complainants; defendant to be credited for interest paid by him on the mortgage, taxes, etc.

BILL TO ESTABLISH TRUSTS. Catherine M. Flinn, now deceased, in her lifetime was engaged in the grocery business in the City of Wilmington. On April 18, 1913, she agreed with Samuel F. Usilton and wife to sell and transfer to Mrs. Usilton the stock of goods and fixtures used in her business in consideration of the conveyance by the Usiltons to her of a certain lot of land owned by Mrs. Usilton and located on Maple Street in the City of Wilmington. The stock of goods and fixtures were duly conveyed to Mrs. Usilton and on May 13, 1913, Usilton and wife executed a deed for the Maple Street lot not to Mrs. Flinn but to her son, this defendant. The bill charges that the defendant has no beneficial interest in the lot, that his mother furnished the full consideration therefor and that the title held by him is subject to a trust resulting in favor of his mother and her heirs at law. Mrs. Flinn died on January 26, 1923, leaving her husband, Thomas Flinn, one of the complainants, to survive her and the other complain-

ants and the defendant as her only children and heirs at law. The answer denies that the defendant holds title to the Maple Street lot as trustee, but on the contrary avers that the conveyance was made to the defendant because of his mother's desire to compensate him for money which he had advanced to her.

The bill also alleges that Mrs. Flinn purchased another parcel of real estate in Wilmington known as 223 Broome Street on June 15, 1918, from one Mortlock and wife for the consideration of forty-one hundred dollars, but that title to this lot was taken by her in the name of her son John, the defendant in this cause. The purchase price was supplied by cash in the amount of sixteen hundred dollars and by the execution of a twenty-five hundred dollar bond and mortage on the premises given by the defendant in whom legal title to the same was vested by the deed. On the same day, viz., June 15, 1918, the bill charges that the defendant executed a declaration of trust in which, after reciting the conveyance to him by the Mortlocks and the execution by him of the said bond and mortgage, he proceeded to declare as follows:

"Now know ye, That I, the said John F. Flinn, do by these presents make known, admit and declare that the said premises were conveyed to me for the use and benefit of Catherine M. Flinn, of the City of Wilmington, New Castle County and State of Delaware, her Heirs and Assigns, and that I have no beneficial interest therein except what may arise by legal or equitable implication from the circumstance of my having executed the said bond and mortgage, and that I stand seized of said land and premises herein described in trust for the said Catherine M. Flinn.

"And I do further admit that the residue of the consideration money expressed in said deed to me, to-wit, the sum of sixteen hundred dollars, was paid by Catherine M. Flinn and was and is the proper money of the said Catherine M. Flinn and that I hereby agree for myself, my Heirs or Assigns, to convey the same at any time or times hereafter upon the request and at the cost of the said Catherine M. Flinn, her Heirs, Executors, Administrators or Assigns, by a good and sufficient deed to the said Catherine M. Flinn, her Heirs or Assigns, together with all my estate, right, title and interest thereunto, as she or they may direct or require, whenever and as soon as the said mortgage so executed by me shall have been paid off and dischared by the said Catherine M. Flinn, her Heirs, Executors, Administrators or Assigns; and that I further agree that the said premises shall be conveyed free, clear and discharged of and from all and every encumbrance thereon created by me or by my Heirs; and I do further, for myself, my Heirs, Executors, Administrators, covenant and agree to and with the said Catherine M. Flinn, her Executors, Administrators

and Assigns, that I, or my Heirs, shall not do or knowingly suffer or permit any act, deed, matter or thing whereby said premises is or may be in anywise injured, impaired or encumbered in title, interest, charge, estate or otherwise howsoever."

The bill alleges that the sixteen hundred dollars in cash was supplied by Mrs. Flinn and that the defendant holds title to these premises as trustee for the heirs of Mrs. Flinn. The defendant denies that the sixteen hundred dollars was supplied by his mother, avers that it was supplied by himself and says that he has no knowledge of the declaration of trust described in the bill. He also denies that his title to the premises is impressed with any trust of any nature.

The defendant is and has been in possession of both the properties in question. He has been occupying the Broome Street house since his mother's death.

The prayers are that the defendant be declared to hold title to the premises in trust for the heirs at law of Mrs. Flinn; that an account be taken of what is due on the mortgage upon the Broome Street property; that the defendant be ordered to account for a reasonable rental for its use and occupation with proper allowance for interest, taxes and repairs; and that a sale be ordered of both properties.

*Henry R. Isaacs*, for the complainants.

*J. Frank Ball*, for the defendant.

Tʜᴇ Cʜᴀɴᴄᴇʟʟᴏʀ. With respect to both of the parcels of real estate involved in this cause, the defendant denies that the complainants have any beneficial interest therein. He claims to be not only the sole legal owner of both properties but as well the sole beneficial owner.

As to the Broome Street property the declaration of trust executed by the defendant is conclusive against him. While he does not admit that he executed it, yet he does not deny it. The utmost extent to which his answer and testimony go is that he has no recollection of executing the document. It was duly recorded. The original was introduced in evidence and the defendant admitted that the signature looks like his own, an admission which a

bare inspection plainly compels. Under the evidence I have no doubt that the declaration of trust is the act and deed of the defendant. Indeed his solicitor does not seriously contend to the contrary. The most that seems to be urged in this connection is that the defendant in truth supplied the sixteen hundred dollars in cash which was paid on account of the purchase, that his money therefore and not his mother's bought the premises. But this testimony cannot stand in the face of the solemn admission to the contrary appearing over his own hand and seal in the declaration of trust executed by him. If the money came from him as he claims, the admission in the declaration of trust indelibly impresses upon the transaction the character of a gift by him of the money to his mother. The title to the Broome Street house must, therefore, be decreed to be held by the defendant under the terms of the trust as set out in his formal declaration.

As to the Maple Street lot, the circumstances are different. There is no admission in the form of a declaration as in the case of the other property. The case with respect to this lot is one where the mother gave her own store goods in exchange for the lot. She paid the consideration but the title was placed in her son. Where one pays the consideration for real estate but the title is taken in the name of another, equity regards the latter as a trustee for the former. A resulting trust is raised out of such a situation. Such a trust is based on the equitable doctrine of consideration which from the time of the early Chancellors of England to the present day has been accorded consistent recognition and has received repeated application. The theory of the rule is that the payment of a valuable consideration draws to it the beneficial ownership. But where the consideration is a good one based on love and affection as distinguished from a valuable one, then the reason of the rule fails. Accordingly where the person who supplies the consideration stands towards the grantee in the relation of a parent or in *loco parentis*, the authorities are, in the absence of statute, uniform to the effect that the general rule by which a resulting trust would otherwise be erected has no application. It is presumed that the intention was to advance the child. This is a well recognized exception to the general rule. It is rooted in the facts of human experience which tell all men that the same motives

of selfish interest which are found in transactions between strangers are not generally to be looked for in dealings between those standing in the relation of parent and child. The solicitor for the complainants concedes the rule to be as stated in 39 *Cyc.* 143, as follows:

"As a general rule, a purchase of property by a parent with his or her own funds or assets in the name of a child of such parent will be presumed, in the absence of circumstances showing a contrary intent, to be an advancement or gift to the child, and not a resulting trust in favor of the parent."

There are two particulars, however, in which it is contended by him that the defendant is unable to bring himself within the benefit of the presumption which generally speaking would operate in favor of his having received the Maple Street lot as a gift or advancement.

The first is that the rule as above stated is not operative when the parent is under no obligation to support or maintain the child and that as in this case the parent was a mother and the son an adult person the rule does not therefore apply. In support of this contention the uncontested case of *In re De Visme*, 2 *De G. J. & S.* 17, is cited. In that case it does appear from the argument of counsel that in making the order the Lord Justices acted on the view that the presumption of a gift or advancement is based on the obligation to maintain and support. Unless this be the reason underlying the decision, it is difficult to conceive why a distinction should be drawn between a case where the parent is a mother and one where the parent is a father, a distinction which was relied upon by the petitioner in that case and accepted by the Justices. Vice Chancellor Sir John Stuart in *Sayre v. Hughes*, *L. R.* 5 *Eq.* 376, in discussing the case of *In re De Visme* appears to understand it as predicating the presumption of a gift or advancement upon the obligation peculiar to the male parent only to provide for and maintain the child, a wrong foundation he indicates upon which to base it. He places it rather upon the natural one of love and affection entertained by parents generally whether father or mother, towards children. In the later case of *Bennet v. Bennet*, 10 *Ch. Div.* 474, the Master of the Rolls seems to accept the doctrine of *In re De Visme*, and to doubt the correctness of

view of the Vice Chancellor in *Sayre v. Hughes*, *supra*, in departing from it.

Certainly the mere circumstance of the sex of the parent can be of no significance in determining the question of whether benefit to the child was intended by a conveyance procured to be made by the parent in the child's name, unless it be in connection with an obligation to make provision. A mother is under no legal obligation to provide and maintain an adult child. Neither is a father. While *In re De Visme* allows the absence of the obligation to prevent the arising of the presumption of a gift or advancement in the case of a mother, yet in the case of *Sidmouth v. Sidmouth*, 2 *Beav.* 447, which presented a transaction between a father and an adult son, Lord Langdale as Master of the Rolls decided that the circumstance that the son was an adult was not material. While therefore in the English cases above referred to some countenance is lent to the idea that the presumption of an advancement or gift is based on the presence of a paternal as distinguished from a maternal obligation, yet this idea is not uniformly accepted. A distinction which would leave the obligation which equity recognizes in such cases as this to turn upon the sex of the parent is too tenuous for me to grasp and does violence to every impulse of the maternal breast. Vice Chancellor Sir John Stuart in *Sayre v. Hughes* very forcefully repudiates it. And Prof. Pomeroy in his authoritative treatise on *Equity Jurisprudence*, (*4th Ed.*) *vol.* 3, § 1039, likewise states that no distinction founded on the sex of the parent exists. His language is:

"It appears to be now settled that the same rule applies to a mother who purchases property in the name of her child, or in the joint names of herself and child, and pays the price with her own separate funds, no trust results."

Cases are cited in support of this text and *In re De Visme* is noted *contra*.

My conclusion with respect to this branch of the case is that the conveyance to the defendant is presumed to have been intended by his mother to have been by way of a gift or advancement.

This presumption is, however, not a conclusive one. The complainants seek to rebut it. This is the second particular in

which they endeavor to take from the defendant the benefit of the presumption. The only testimony they produce to overcome the presumption consists of the evidence of Frank Burke, a brother of Mrs. Flinn, who seems to have managed the grocery business for her. He testifies that he asked Mrs. Flinn why she had the title to the lot put in her son's name, and that she replied that she did not want her husband to get hold of the property and squander it. This conversation he says took place right after the sale was made.

Suppose Mrs. Flinn made the statement as testified to by her brother, is it sufficient to rebut the presumption running in the son's favor? I think not, and for two reasons. First, the statement is by no means clear in indicating that she did not wish her son to have the property. Her desire to remove it completely from the reach of her husband is not at all inconsistent with a desire to give it to her son. Second, her statement was made after the transaction had been completed. The following is from 3 *Pomeroy's Equity Jurisprudence*, (4th Ed.) § 1041:

"Extrinsic evidence, either written or parol, is admissible on behalf of the husband or parent paying the price to rebut the presumption of an advancement or gift, and to show that a trust results; and conversely, such evidence may be used to fortify and support the presumption. In general, this extrinsic evidence, to defeat an advancement and establish a trust as against the party to whom the property is conveyed or transferred and those holding under him, must consist of matters substantially contemporaneous with the purchase, conveyance, or transfer, so as to be fairly connected with the transaction."

To the same effect is 1 *Perry on Trusts*, (4th Ed) § 147, where it is said:

"Of course, declarations made by the husband or father after the purchase are incompetent to control the effect of the prior transactions."

I have examined the cases cited in support of the text taken from these authoritative works and see no occasion for reviewing them. Just when the statement which the witness Burke attributes to Mrs. Flinn was made is not clear. He says it was "right after" the sale. How long after, it is impossible to say. Conceding the sufficiency of the evidence if admissible to rebut the presumption of a gift or advancement, it nevertheless does not bring itself

within the requirement of the rule that demands that it shall be substantially contemporaneous, and is therefore not admissible.

With respect, therefore, to the Maple Street lot, the decree must be that the defendant is entitled to hold the same free and clear of all trusts in favor of the complainants. It is unnecessary in view of what has just been stated to consider the further questions raised at the hearing with respect to the defendant's claim that he supplied his mother with the money which established her grocery business and therefore in fact furnished the consideration which she gave for the Maple Street lot.

Having disposed of the merits of the case, the next question that arises is as to the nature of the relief to be afforded in connection with the Broome Street property. The complainants ask that an accounting be decreed against the defendant for a reasonable rental to be charged against him as the occupant thereof with credits for interest paid by him on the mortgage, taxes, etc. They are entitled to this. They ask also that the property be sold free of all liens including the mortgage and that the lienors be required to transfer their liens to the proceeds. I do not at present see how, granting the power of the court to order a sale, the mortgagor who is not a party can be compelled to surrender his lien on the land for a lien on the proceeds. It is not necessary, however, at this time to pass upon the question of the form of relief to be ordered in the final decree. That may await determination in due course.

At the present stage let an interlocutory decree for an accounting in connection with the Broome Street property be entered.