SHARPLESS-HENDLER ICE CREAM COMPANY, a corporation of the State of Delaware,

vs.

ESTHER DAVIS.

*New Castle, April* 8, **1931.**

*Aaron Finger,* of the firm of Richards, Layton and Finger, for complainant.

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward and Logan, for defendant.

THE CHANCELLOR. The question before the court on this rehearing is as to whether the contract was binding on the de-

fendant because of the fact that she could not read and the contract was neither read nor explained to her. The defendant could write, at least to the extent of signing her name, as is evident from the contract itself. There is no testimony that the complainant's agent, who procured the contract, was aware of the fact that the defendant could not read. The only evidence on this point is from the agent himself, who testified that at the time he thought the defendant could read, that he has no reason now to think otherwise, that before the contract was signed the defendant read it, looked it over and he took it for granted that the defendant read it. The agent claims to have stated in a general way what was in the contract before it was signed. The defendant denies this. She does not however claim that the agent at any time falsely stated the contract's contents. She did not tell the agent that she could not read. The contract was not read to her. She did not ask that it be read. The evidence, being solely that of her own testimony, is that as a matter of fact she could not read.

In the opinion filed by me on February 13, 1931, I held that the bill should be dismissed on the sole ground that inasmuch as there was no evidence that the contract had been honestly and fairly read or explained to the illiterate defendant, its existence had not been established. In so holding I relied on the categorical statement found in *Green v. Maloney*, 7 *Houst.* 22, 30 *A.* 672, 673, approved in *Ajax Rubber Co. v. Rothacker, et al.*, 1 *W. W. Harr.* 376, 114 *A.* 610 (which went to the Supreme Court) that "no paper is valid to charge an illiterate man—one who can neither read nor write, * * * unless it appear, upon a contest, that it was honestly and fairly read or explained to him," as establishing the rule in Delaware, though authority to the contrary is to be found elsewhere. Upon further examination, I am persuaded that the language in *Green v. Maloney* is not to be accorded such universality of application as the absolute character of its phrasing suggests. As so expressed it is a rigid rule that admits of no yielding even though perfect good faith on the part of the party relying on the contract may have attended every stage of its negotiation and execution. The facts in *Green v. Maloney* show the issue to have been one of fraud which con-

sisted in an alleged false reading of the bond so as to deceive the illiterate. Where that is the issue, the rule announced by the court in *Green v. Maloney* is unobjectionable notwithstanding the generality of its language, for if one party undertakes to read a proposed contract to the other who is incapable of reading, a false reading would be such a plain fraud as to result in the invalidating of the contract. In *Ajax Rubber Co. v. Rothacker, et al.*, the issue was likewise one of fraud, viz., whether the nature of the contract and the notes had, when explained to the illiterate, been honestly and truthfully stated to her.

It appears therefore that the general statement in *Green v. Maloney* to the effect that no paper is valid to charge one who cannot read unless it appear, upon a contest, that it was honestly and fairly read or explained to him, is to be accepted in the light of the facts to which the court was applying it, that is to say to a case where active fraud and deception were charged to have procured the appearance of a contract when in fact there had been no meeting of minds upon agreed terms.

That however is not the sort of case we have here, for in the instant case there is no claim that the contract was falsely read to the defendant. Indeed it was not read to her at all. Nor is there any evidence that the complainant's agent, in saying what he did to the defendant about the character of the contract, falsified in any particular. It is a simple case of where an illiterate person, unknown to the other party to be illiterate, chose to affix her name to an agreement without demanding that it be read to her, and without being misled in any way by the other party to it. Where such is the case, the following authorities hold that the fact of illiteracy is of no materiality, and that the contract is binding. *Modern Security Co. v. Lockett, et al., (N. J. Sup.)* 143 *A.* 511; *First Nat. Bank v. Ten Napel, et al.,* 198 *Iowa,* 816, 200 *N. W.* 405; *Wilkisius v. Sheehan,* 258 *Mass.* 240, 155 *N. E.* 5; *Sponseller v. Kimball,* 246 *Mich.* 255, 224 *N. W.* 359; *Shulman v. Moser,* 284 *Ill.* 134, 119 *N. E.* 936; *Schmidt v. Bekins, etc., Co.,* 27 *Cal. App.* 667, 155 *P.* 647; *Constantine v. McDonald,* 25 *Idaho,* 342, 137 *P.* 531; *Haag v. Burns,* 22 *S. D.* 51, 115 *N. W.* 104; *Mulderrig v. Burke,* 24 *Misc. Rep.* 716, 53 *N. Y. S.* 1004. Many other authorities to the same effect are

to be found. See, also, 13 *C. J.* 372, and 6 *R. C. L.* 625. The principle upon which the foregoing cases rest is that of estoppel. It is nowhere better stated than by Judge Sanborn in *Chicago, St. P., M. & O. Railway Co. v. Belliwith,* (*C. C. A.*) 83 *F.* 437, 440, as follows:

"If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be not to read it before he signed it if he were able to do so; and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

Professor Williston in *Section* 357 of his work on Contracts puts the matter in this way:

"Throughout the formation of contracts it is to be observed that not assent, but what the other party is justified as regarding as assent, is essential. Accordingly if an offeree in ignorance of the terms of an offer so acts or expresses himself as to justify the other party in inferring assent, and this action or expression was of such a character that a reasonable man in the position of the offeree should have known it was calculated to deceive the offeror into the belief that his offer had been accepted, a contract will be formed in spite of the offeree's ignorance of the terms of the offer. The commonest illustration of this principle is where one who is ignorant of the language in which a document is written, or who is illiterate executes, under a mistake as to its contents, a writing proposed as a contract. He is bound, if he did not require the document to be read to him. * * *"

This is tantamount to saying that the party to be charged is estopped to deny his assent because of conduct which reasonably justified the other party in believing that assent had been expressed.

*McKinney v. Boston & M. R. R.,* 217 *Mass.* 274, 104 *N. E.* 446, holds that if the inability to read of one party is known to the other or is otherwise brought home to him as when the illiterate makes his mark, the first party has no right to make an assumption as to the ability of the other to read, and that in such case the illiterate is not bound unless he in fact knew and agreed to the terms. But even if it be conceded that the general rule is to be deviated from where the facts are such as are found

in the Massachusetts case, the concession would avail nothing to the defendant in the instant case, because there is nothing to show that the complainant's agent knew that the defendant could not read. The agent thought and continues to think that she could. There was no circumstance of signing by mark to put the agent on notice of possible illiteracy. The defendant signed her own name.

Decree for complainant.