HARLEY R. BODLEY, Executor of the Estate of William Fortner, Deceased,

Defendant Below, Appellant,

*vs.*

RHODA E. JONES, also known as Rhodie E. Jones,

Complainant Below, Appellee:

*Supreme Court, On Appeal, April 26, 1943.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*William Prickett,* for appellant.

*Philip Cohen,* for appellee.

LAYTON, Chief Justice, delivering the opinion of the court:

This is an appeal from a decree of the Court of Chancery impressing a trust in favor of the apellee upon the proceeds of a bond and mortgage.

The appellant is the executor of the last will and testament of William Fortner, deceased, who at the time of his death, was the mortgagee and obligee named in a certain mortgage and bond given and executed by one Royden Caulk, bearing date October 8, 1935, to secure the payment of the sum of $3500.00, and of record in the office of the Recorder of Deeds for New Castle County.

Subsequent to the mortgage, on October 16, 1935, William Fortner signed, sealed and delivered to the appellee a paper writing in these words:

"To Whom It May Concern:

"This is to certify that the money invested in the Royden Caulk bond and mortgage for Thirty Five Hundred Dollars ($3500.00) belonged to Miss Rhodie E. Jones of Appoquinimink Hundred and in the event of my death this bond and mortgage is to be turned over to her by my executor if I have not done so previously."

William Fortner died on July 21, 1940, without having transferred the bond and mortgage to the appellee. The appellant, as executor, refused to make the transfer. Consequently, on January 17, 1941, the appellee filed a bill of complaint in the court below against the executor praying that the bond and mortgage be impressed with a trust in her favor; and that the appellant, as executor, be directed to transfer the bond and mortgage to her.

The appellant in his answer averred that the money invested in the bond and mortgage was not the money of the appellee; and that the paper writing made and delivered by the deceased to the appellee was not sufficient to, and did not, transfer title to the bond and mortgage to her.

The appellee promptly moved for a decree notwithstanding the answer. Thereupon, the appellant was allowed to amend his answer by averring that the money invested in the mortgage was the money of William Fortner, the deceased; and that he, from the date of the bond and mortgage to the time of his death, took all payments of interest on the bond and mortgage for his own use.

On June 24, 1942, the Chancellor filed an opinion in which it was stated that a decree would be entered in favor of the appellee pursuant to the prayers of his bill. To clarify an averment in the answer to which reference was made in the opinion, the appellant, upon leave granted, filed a further amendment to his answer in which it was averred that the interest on the bond and mortgage became due and payable at regular intervals, and that at all times the interest was paid to and collected by the deceased mortgagee, who received and used the payments of interest for his own benefit and purposes; and that during the lifetime of the deceased, the appellee never made demand for the payment to her of the interest as it accrued. It was held, however, that the amended answer did not affect the conclusion reached in the opinion filed that the deceased intended to declare a trust. *Jones v. Bodley*, 26 *Del.Ch.* 218, 27 *A.* 2d 84. A final decree

was entered, and this appeal followed. Since the hearing, and by consent, the mortgage debt was paid, and the proceeds are in the possession of the appellant.

There is a preliminary comment to be made. At one place in the opinion of the Chancellor he is careful to say that the allegations of the first amendment to the answer were on information and belief. Standing alone the statement is of small significance; but again, in the note appended to the opinion proper having relation to the second amendment to the answer, the Chancellor stated that the defendant was subsequently permitted further to amend his amended answer by specifically alleging, "though on information and belief" the facts averred therein. The reiteration of the statement that the averments of the amendments were on information and belief has given rise to some speculation whether the fact was given weight in arriving at the conclusion. If the statements were not idly made and were intended to have significance, it must have been for the reason that the allegations of the amendments were not regarded as positive in character. The language of the pleader in each instance, however, was that the respondent "is informed, believes, and, therefore, avers." There are cases holding that an averment on information and belief puts in issue only the party's information and belief, and not the truth or falsity of the facts referred to. 21 *C.J.* 395; 30 *C.J.S., Equity,* § 223; 3 *Ency. Pl. & Pr.,* 360. But where the party states that he is informed, believes and, therefore, avers the truth of a fact, it is more than an averment of confidence in the source of information, and is a sufficiently positive allegation of fact. 21 *C.J.* 395; 30 *C.J.S., Equity,* § 223; *Read v. Walker,* 18 *Ala.* 323; *Coryell v. Klehm,* 157 *Ill.* 462, 41 *N.E.* 864.

The applicable principles of law are well settled. The legal owner of personal property is *prima facie* entitled to its beneficial use and enjoyment. He may, by a declaration of trust, constitute himself a trustee of the property for the

use and benefit of another even without receiving consideration therefor. Technical words are not necessary, nor is any particular form required. It is the intention of the donor that is to be discovered; and the intention to change position from that of owner to one of trustee is that which is outwardly manifested by either written or spoken words or by conduct. Such intention effectuated means a present gift of the equitable estate with reservation of the legal title. Instability of titles with dangerous and far reaching consequences would ensue if an express trust could be created by language or circumstances capable of another construction, or consistent with a different intention; and the authorities are agreed that in order to create an express trust the intention so to do must be evidenced by definite, explicit and unequivocal words, or by circumstances so revealing and compelling as to manifest the intention with all reasonable certainty. It follows, necessarily, that the words or the circumstances must admit of but one interpretation, and no trust is created if the transaction is as consistent with another form of undertaking as with that of a trust. *Elliott v. Gordon,* (10 Cir.), 70 *F.2d* 9; *Beaver v. Beaver,* 117 *N.Y.* 421, 22 *N.E.* 940, 6 *L.R.A.* 403, 15 *Am.St.Rep.* 531; 65 *C.J.* 280; 1 *Scott, Trusts,* 147. See *Maxfield v. Terry,* 4 *Del.Ch.* 618.

There is nothing in the opinion of the Chancellor to suggest any disagreement with these accepted principles. The conclusion reached was that the fair and reasonable inference to be drawn from the language of the document was that the deceased intended to declare himself a trustee for the benefit of the appellee. The averments of the answer as amended, which for the purposes of the motion for a decree were admitted to be true, that the money invested in the bond and mortgage was the money of the deceased, that the interest on the investment was regularly paid to the deceased and was used by him as his own, and that the appellee never made demand for the interest in the lifetime of the deceased, were waived aside as without importance.

This conception of an intention to create a trust as manifested solely by the language used would be understandable enough, although disagreement with the view is permitted, were it not that the learned Chancellor surprisingly proceeded to say that the language of the document was sufficiently ambiguous to permit the use of surrounding circumstances to aid in determining the intent. This is, perforce, an admission that the language itself is inadequate to discover the declarant's intention with the certainty that is required, and in such case the doubtfulness of intention as disclosed by the words must be set at rest by extrinsic circumstances. If resort be had to circumstances, the fact that the deceased delivered the document to the appellee is not to be entirely ignored; but it is not essential that the declaration of trust be delivered to the beneficiary nor that he be informed of its existence. *In re Brown's Will*, 252 *N.Y.* 366, 169 *N.E.* 612; 1 *Scott, Trusts*, 150. The fact of delivery alone does not supply the inadequacy of the writing as a sufficient disclosure of an intention to create a trust; and other circumstances tend to negative such an intention. The fact that the deceased for nearly five years regularly collected and applied to his own use the income from the investment strongly suggests that he did not intend to make, nor understand that he had made, a present gift of the bond and mortgage with a trust attached, and that he held them for the benefit of the appellee. And, likewise, the fact that during these years the appellee made no demand for the interest, as it accrued and became payable from time to time, indicates forcibly that she did not understand and believe that she was entitled to any present right and interest in the bond and mortgage. *Elliott v. Gordon, supra.* These strongly persuasive circumstances were thought to be unimportant; and, reading the opinion as a whole, it seems to have been held that the declaration, although ambiguously phrased, was, nevertheless, an adequate manifestation of the deceased's intention to create a trust for the benefit of the appellee.

With deference to the conclusion reached, we are compelled to take a different view of the language of the document. Standing alone, and giving to the words used their plain meaning, the declaration seems to be no more than a written acknowledgment of a type of trust, called a resulting trust, raised by implication of law, and presumed to have been contemplated by the parties, in favor of the person furnishing the consideration for the transaction. The document declares that the money invested in the bond and mortgage belonged to the appellee. If this be true and certainly the deceased took the security in his own name, the equitable title both to the money and the security which represented the money vested *eo instanti* in the appellee. The deceased was not dealing with his own property, and by a declaration changing his position from that of owner to one of trustee. The law made him trustee at the outset.

But here, as well as in the court below, the theory of a resulting trust, for whatever reason, is expressly disavowed. It is insisted that the writing itself is entirely adequate as a declaration of trust; and it is when the attempt is made to twist the plain language of the document into an unequivocal expression of an intention to create an express trust in favor of the appellee that formidable difficulty arises. The language used is insufficient for the purpose, and when extrinsic circumstances are considered the doubt grows as to the type of transaction intended. Reading the document in the light of the admitted fact that the money invested in the bond and mortgage was the money of the deceased and not of the appellee, what remains is but an expression of an intention on the part of the deceased to transfer in his lifetime the bond and mortgage to the appellee, and failing which, a direction to his executor to make the transfer. Conceding, *arguendo,* that the language of the writing and the surrounding circumstances may possibly be interpreted as evidencing an intention to create a trust in the appellee's favor, other interpretations are more allowable; one is that it was the de-

ceased's intention to make a gift *in futuro* of the bond and mortgage to the appellee; another that he attempted a testamentary disposition not in a manner authorized by law. In either of the last mentioned situations a court of equity is powerless.

We are satisfied that a decree in favor of the complainant should not have been rendered, and the cause will be remanded to the court below for such other and further proceedings as may be thought necessary or expedient. We do not know what course the appellee may pursue, nor what the truth of the matter may prove to be. If it shall be proved that the money invested in the bond and mortgage was the appellee's money, as the document declares, she would be entitled to a decree in the absence of countervailing circumstances. If, on the other hand, the money so invested was the money of the deceased, in the absence of facts and circumstances showing clearly and unequivocally the deceased's intention to declare a trust in the appellee's favor, the appellee would not be entitled to relief.

Reversed and remanded.