RHODA E. JONES, also known as RHODIE E. JONES,

*vs.*

HARLEY R. BODLEY, Executor of the Estate of WILLIAM FORTNER, deceased.

*New Castle, October 26, 1944.*

*Philip Cohen* and *Harry K. Hoch,* for complainant.

*William Prickett* and *Vincent A. Theisen,* for defendant.

HARRINGTON, Chancellor: The complainant seeks to enforce an alleged resulting trust. She claims to be the real owner of a certain sum of money invested by William Fortner during his lifetime in his own name, and seeks to compel the assignment to her of the bond and mortgage in which the money was invested.

The defendant is Fortner's executor.

The bill alleges, among other things, that William Fortner, at the time of his death, was the legal owner of a bond and mortgage for $3500, executed by one Royden Caulk, of Blackbird Hundred, dated October 8th, 1935, and of record in the office of the Recorder of Deeds, for New Castle County. That on October 16th, 1935, the said William Fortner executed, under his hand and seal, and delivered to the complainant the following instrument in writing:

"Blackbird, Del., October 16th, 1935

"To Whom It May Concern:

"This is to certify that the money invested in the Royden Caulk bond and mortgage for Thirty-five Hundred Dollars ($3500.00) belonged to Miss Rhodie E. Jones of Appoquinimink Hundred and in the event of my death this bond and mortgage is to be turned over to her by my executor if I have not done so previously.

"Witness my hand and seal this sixteenth day of October, A. D. 1935.

"Wm. Fortner (Seal)

"Witness:

"W. W. Hynson"

The bill further alleges that William Fortner died July 21st, 1940, and during his lifetime did not assign or turn over the Caulk bond and mortgage to the complainant; nor has his executor done so since his death, though repeatedly requested so to do.

The prayers are that the Caulk bond and mortgage be decreed to be the property of Rhoda E. Jones; that the defendant be directed to assign them to her, and that he "account to the complainant for any interest received by him" thereon.

There is also a prayer for general relief.

The amended answer alleges: (1) That the money invested in the mortgage, referred to in the bill, is not the money of the complainant; (2) that the instrument set out in the bill of complaint did not transfer title to said bond and mortgage to the complainant; (3) that the interest accruing on the Caulk bond and mortgage was regularly collected by Fortner during his lifetime, and was at all times received and used by him for his own purposes and benefit; and (4) that from the date of the execution of the Caulk bond and mortgage no demand was made by the complainant for the payment to her of interest which had accrued thereon.

The bill does not specifically allege that the money invested in the Caulk bond and mortgage belonged to the

complainant, but that statement is made in the written memorandum, signed by William Fortner, which composes a part of it. The defendant's answer denies that allegation, and that is the question to be determined.

The proof offered by the complainant consists of (1) the more or less formal declaration in writing signed by Fortner, dated October 16th, 1935, and (2) his declarations to the same effect to Walter Hynson who prepared that paper and was a witness thereto.

Miss Jones did not take the stand in her own behalf; if she knew any facts material to the issue, and they related "to any transactions with or statements by" Fortner, she could not have testified thereto unless "called * * * by the opposite party" to the suit, who was Fortner's executor. *Rev. Code* 1935, § 4687. But the direct and positive evidence produced on her behalf makes out a strong case in support of her claim that the money invested by Fortner, though in his name, belonged to her.

Rhoda E. Jones was called by one of the defendant's solicitors as on cross examination, but was only questioned on facts not pertaining to statements by, or transactions with, Fortner during his lifetime. The defendant's evidence is wholly circumstantial, and, though some other evidence was produced, was largely offered in support of the contention that, notwithstanding Fortner's positive admissions, Rhoda E. Jones could not have had $3500 in October of 1935. Her father was a farmer in Blackbird Hundred, and apparently in not very prosperous circumstances. His property was mortgaged, and subsequently was sold on foreclosure proceedings. At various times over a period of years, he hauled timber for Fortner who was in the lumber business.

Miss Jones' mother died in 1932, and since then she had kept house for her father, without any compensation other than the proceeds from the poultry raised on the

farm. She completed her grammar school course, but never went through high school. During the year 1918, she worked in a canning factory, presumably during the usual canning season, but it does not appear what she earned or what she received from the poultry raised on the farm between 1932 and 1935. After 1918, she was not employed away from the farm until 1943 when she worked at the Bellanca Aircraft factory.

During the year 1936, Miss Jones had a balance of about $200 on deposit to her credit in the Fruit Growers Bank at Smyrna; during a period of the same year, she also had a little more than $600 on deposit to her credit in the National Bank at Smyrna. It did not appear how she acquired that money, and no evidence was produced with respect to her financial worth in 1935. The mere size of a bank account in 1936 has no essential bearing on one's cash position in 1935.

Conceding that, when called on cross examination, Miss Jones did not explain how she had acquired the fund claimed by her, that is not necessarily fatal to her case nor was she asked that question.

It appeared that in the fall of 1935, Royden Caulk had applied to Fortner for a loan, to be secured by his bond and mortgage, and did not know Miss Jones in the case. She was not present when the papers were executed and delivered, and Fortner gave his personal check to his attorney for the money to be invested. Fortner died July 21st, 1940. The interest on the bond and mortgage had been paid to him from time to time by Caulk's check until the defendant was appointed his trustee in insanity proceedings in January of 1940. This was after Fortner had received a severe injury while carrying on his lumber business.

Three checks for interest on the bond and mortgage, drawn to the order of Fortner by Caulk, were produced, none of which was endorsed by Rhoda E. Jones. It was

admitted that they had been deposited to Fortner's credit in bank. One other check drawn by Caulk to the order of the defendant, as trustee, after January 1940, was produced. It had been deposited in bank to the credit of the trustee. The numerous checks drawn by Fortner to various persons and his checkbook stubs had been destroyed by the defendant prior to the hearing. Bodley testified that he had examined the checks and had found none drawn to the order of Miss Jones or any checkbook stubs indicating that such checks had been drawn. He admitted, however, that there were numerous checks which had been drawn by Fortner to his order, or otherwise, and cashed by him.

On October 1st, 1940, Rhoda E. Jones probated a claim for the principal debt of the bond and mortgage and filed it with the defendant, who was then Fortner's executor. But she at no time made any demand on him for the interest on the $3500, which she claims belonged to her; nor did she ever demand an assignment of the Caulk bond and mortgage while the defendant was acting as Fortner's trustee.

Conceding the possible inference that Rhoda E. Jones could not have saved $3500 from her earnings in raising poultry or otherwise prior to October 8th, 1935, other evidence is necessary to rebut the complainant's case.

The allegation that the paper signed by Fortner on October 16th, 1935 was delivered to the complainant was not proved, but that is not absolutely essential.

Should a decree be entered for the complainant, Fortner's estate would be affected thereby, and his positive admissions are not overcome by mere possible adverse inferences.

See *Simeone v. Lindsay,* 6 *Pennewill* 224, 65 *A.* 778; *McClafferty, et al., v. Flinn,* 14 *Del. Ch.* 307, 125 *A.* 675; *Govin v. De Miranda,* 140 *N.Y.* 474, 35 *N.E.* 626; 22 *C. J.* 424; 31 *C. J. S., Evidence,* § 382.

Perhaps we may wonder whether an incomplete gift,

or even a testamentary disposition, by Fortner was attempted by the instrument signed by him on October 16th, 1935; but that does not appear from the evidence.

At the close of the complainant's primary case, the defendant moved to dismiss her bill, claiming that on the prior motion for a decree notwithstanding the defendant's answer, she had relied on an express trust and that the bill had not been amended. The motion was rightly denied. The complainant did claim that it appeared from the pleadings that Fortner had declared himself a trustee for her, and her motion was argued and disposed of on that theory, but that is not conclusive of her rights when it appears that a mere implied trust is alleged. Any relief granted a complainant in equity must correspond with the case alleged in the bill. *Cloud v. Whiteman,* 2 *Del.Ch.* 23; *Flint v. Davis,* 110 *Vt.* 401, 8 *A.2d* 671; *Miller v. Hammer,* (3 *Cir.,*) 269 *F.* 891; 1 *Whitehouse Eq.Pr.,* 169; 21 *C.J.* 672, 674, *note;* 30 *C.J.S. Equity,* § 605. When, therefore, a resulting trust is alleged, there can be no decree for an express trust (21 *C.J.* 675, *note;* 30 C.J.S., Equity, § 605) ; nor will the defendant's answer, ordinarily, change the nature of the cause alleged in the bill. *Flint v. Davis, supra; Tallahassee Variety. Works v. Brown,* 106 *Fla.* 599, 138 *So.* 759, 144 *So.* 848.

But the defendant did not invoke any of these rules in arguing the motion. It now appears that the bill alleges a resulting trust, the evidence sustains that allegation, and a decree must be entered accordingly. See *Bodley v. Jones,* 27 *Del. Ch.* 273, 32 *A.* 2d 436.

The case was set for trial on final hearing on October 20th, 1943, and a subpoena for the appearance of Rhoda E. Jones, as a witness, was issued by the defendant October 19th, and came into the hands of the sheriff about 4 P.M. that day. He attempted to serve it, but the complainant was away from home and out of the state as she had been told by her solicitors that she would not be needed as a witness,

on her own behalf, and it would not be necessary for her to attend the hearing. Testimony was taken on October 20th and the defendant sought to have the bill dismissed because the complainant was not present for examination, claiming that she was attempting to obstruct the due course of justice. *State v. Early,* 3 *Har.* 562. At the close of the day, the case was adjourned to November 3rd. The complainant was in Maryland, not many miles from her home, and had learned from some members of her family several days before November 3rd that she was wanted as a witness, but did not appear in court for examination. There is nothing to indicate that her solicitors had communicated with her since October 27th.

The motion to dismiss the bill was renewed on November 3rd, and the complainant's solicitors were finally told by the court that the case would not be disposed of until she had appeared for examination. The hearing was then adjourned until November 10th. Rhoda E. Jones appeared and was fully examined by the defendant. Other testimony was taken the same day.

A court of equity is a court of conscience, and, as a general rule, will not aid a complainant who has been guilty of any reprehensible conduct relating to the matter in controversy, which violates the fundamental conceptions of equity jurisprudence (*Sharpless-Hendler Ice Cream Co. v. Davis,* 17 *Del.Ch.* 321, 155 *A.* 247; *Electrical Research Products Co. v. Vitaphone Corp.,* 20 *Del.Ch.* 417, 171 *A.* 738; 2 *Pomeroy Eq.Jur.,* (5th Ed.) §§ 397-399, 404) ; and this may be true, though the inequitable and unfair conduct relied on is after suit brought. *Gluck v. Rydnda Develop. Co.,* 99 *N.J. Eq.* 788, 134 *A.* 363, *affirmed* 100 *N.J.Eq.* 554, 135 *A.* 917; *American Ins. Co. v. Lucas,* (D.C.) 38 *F.Supp.* 896; 1 *Story's Eq. Jur.,* (14th Ed.) § 98. Nor is it necessary for the defendant to plead such conduct as a defense. *Sharpless-Hendler Ice Cream Co. v. Davis, supra.*

The complainant should have appeared for examination

before November 10th, but the defendant suffered no injury thereby. *Langdon v. Templeton,* 66 *Vt.* 173, 28 *A.* 866; 2 *Pom.Eq.Jur.,* (*5th Ed.*) § 399; 19 *Amer.Jur.,* "*Equity*", § 474; 30 *C.J.S., Equity,* § 95, *p.* 483; 4 *A.L.R.* 58. She was ignorant of the requirements of judicial procedure, and I am not satisfied that her motives were really improper.

A decree will be entered in accordance with this opinion, but the costs will be taxed against the complainant.

Note. The decree entered in accordance with the foregoing opinion was affirmed in an opinion to be reported in a subsequent volume of Delaware Chancery Reports. See 65 *A.* 2d 484.