ESTELLE KELLEY and PATRICIA KELLEY NIEDLAND,

*vs.*

MAURICE duPONT LEE.

*New Castle, August 8, 1952.*

*James R. Morford,* of Morford, Bennethum, Marvel & Cooch, for plaintiffs.

*John J. Morris, Jr.,* of Hering, Morris, James & Hitchens, for defendant.

SEITZ, Chancellor: The question presented is whether plaintiffs' complaint states a cause of action.

This is a complaint by two plaintiffs, mother and daughter, against an individual defendant charging that he holds certain property in trust for their benefit. Defendant has moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

In order to decide this matter it is necessary to set forth with particularity the more pertinent factual allegations of the complaint, here taken to be true.

Plaintiffs are Estelle Kelley and her daughter, Patricia Kelley Niedland. The daughter, now married, was born October 23, 1920.

About February 22, 1937 defendant created a revocable living trust in which plaintiffs had beneficial interests and of which Equitable Trust Company was trustee. "Plaintiff" will hereafter refer only to Estelle Kelley unless otherwise indicated. Plaintiff knew about February, 1937 that defendant had created a trust although she did not know its terms and conditions except that about February 23, 1937 defendant sent plaintiff a copy of its distribution provisions. They provided that the income was to accumulate during defendant's lifetime and that plaintiff and her daughter were then to be consecutive life income beneficiaries and thereafter the corpus went to defendant's estate.

The creation of the trust mentioned was part of a plan declared by defendant to plaintiff to create a fund from which plaintiff would receive an income of at least $20,000 a year for life followed by a life income to the daughter of at least $15,000 annually.

Plaintiff had no knowledge of the corpus of the trust except that she was informed by the defendant that he withdrew 500 shares of duPont common stock therefrom about June 1937, and except that the defendant repeatedly declared and stated that the trust was to be maintained at all times with a corpus consisting of securities with a value of at least $100,000.

With the withdrawal of the duPont common stock in June 1937, plaintiff became aware that the trust could be altered, amended, or revoked at the will of the defendant.

In furtherance of defendant's declared plan as aforesaid, he advised her in writing in 1937 that he was creating such a trust by codicil to his will but plaintiffs have no knowledge as to whether it was ever executed.

After withdrawing the duPont common stock defendant, in June and early July, 1937, made further declarations and representations to plaintiff in the following chronological order:

(1) He declared and made known to plaintiff that he owned more than 500 shares of duPont common stock and would forthwith replace in the corpus of the trust the shares so withdrawn.

(2) He declared that he would not thereafter exercise his right of amendment or revocation of the revocable trust or withdraw any securities until after consultation with plaintiff and her consent thereto.

(3) He declared that the trust both with respect to the remaining securities therein and with respect to the 500 shares of duPont common stock to be restored should be irrevocable.

About July 10, 1937 as evidence of his intent and purpose that there should be an irrevocable trust with reference to the 500 shares of duPont common stock, defendant gave to plaintiff a further holographic memorandum which reads as follows:

"7/10/37

"I have today written the Equitable Tr. Co. to set up an irrevocable Trust in favor of Estelle and Patricia Kelley with 500 duP Com & $6000 in Bonds

"M. duPont Lee"

Plaintiffs allege that such instructions were given in writing to the Equitable but that on about July 23, 1937 they were revoked without such an irrevocable trust ever having been created.

About August 2, 1937 defendant gave plaintiff a draft of the distribution provisions of a proposed irrevocable living trust and declared and made known to plaintiff that these were the distribution provisions of the irrevocable trust intended by his declaration set forth above and referred to in his holographic memorandum of July 10, 1937.

Between July 1937 and April 1938 defendant gave plaintiff repeated assurances with respect to the creation by him of an irrevocable trust with distribution provisions substantially like those supplied plaintiff and with a corpus consisting of securities having a then value of at least $100,000 and specifically including 500 shares of duPont common, according to the then capitalization of that company. By reason of the aforementioned distribution provisions of the irrevocable trust plaintiff expected to receive payments of income directly rather than that the income should accumulate during defendant's lifetime, as provided by the earlier revocable trust. Therefore, when no income was forthcoming plaintiff made further inquiries of the defendant as to this matter. Defendant thereupon on April 6, 1938 gave plaintiff a further holographic memorandum reading as follows:

"4/6/38

"I am setting up an irrevocable trust in favor of Estelle & Patricia Kelley to the amount of one hundred thousand Dollars including those securities already set up at the value as of the date of said trust any addition sum needed to make full amount to be at todays market

"M. duPont Lee

"This is done as a token of friendship for her years of loyalty."

It is then alleged that

"On this occasion the defendant definitely, explicitly and unequivocally declared and made known to the plaintiff, Estelle Kelley, both by the holographic declaration aforesaid and by his contemporaneous verbal declarations to her, that he was then, there and thereby making a present and irrevocable gift of equitable estates to the plaintiffs in those securities then constituting the portfolio of securities of the revocable trust of February 22, 1937 (Exhibit 'A'), plus a sufficient amount of securities then owned by him to bring the then value of the corpus thereof up to $100,000. and specifically including as a part of such additional securities 500 shares of duPont common stock, according to the then existing capitalization of that company, the equitable estates and interests of the plaintiffs, respectively, in said trust or trusts being as set forth in the draft distribution provisions of August 2, 1937 (Exhibit 'D')."

About May 1, 1938 the defendant further declared to the plaintiff that he was the owner of 300 shares of the capital stock of Visking Corporation (according to its then existing capitalization) which he then and there held subject to and for the account of

the irrevocable trust in favor of plaintiffs declared by his holographic memorandum and contemporaneous verbal declarations of April 6, 1938.

Plaintiff from 1938 till 1950 received periodic sums of money both from the Equitable Trust Company and from the defendant. These sums except for gifts were considered by plaintiff to be income from the irrevocable trust or trusts alleged aforesaid.

Upon a sharp decline in her income plaintiff made inquiries of the Equitable Trust Company and of defendant and thereafter obtained counsel. Plaintiff's inquiries revealed the following:

(a) The revocable trust of February 22, 1937 had never been made irrevocable; that it had been amended by defendant on August 17, 1938; that securities (other than the 500 shares of duPont common) were withdrawn by defendant from time to time without plaintiff's knowledge or consent; that on April 12, 1939 without plaintiff's knowledge defendant had purported to wholly revoke the trust; that the entire portfolio of securities constituting the corpus had been withdrawn by defendant either prior to or at the time of the purported revocation.

(b) That about October 3, 1938 defendant had created an irrevocable trust with Equitable Trust Company as trustee and with distribution provisions in plaintiffs' favor substantially similar to the draft of October 2, 1937, but with a corpus of only about $50,000 in securities; that such trust at no time included in its portfolio any shares of duPont common; that although 300 shares of capital stock of Visking Corporation had been placed therein defendant had first withdrawn for his own account a 100% stock dividend of the 300 shares of Visking which dividend was declared on shares which defendant owned about May 1, 1938 and which he had declared to be a part of the irrevocable trust.

(c) That defendant disavowed and repudiated his status as resulting trustee in respect of any securities whatsoever and would make no further payments to the plaintiff on that account or on any account.

Plaintiff alleges that the relationship between plaintiff and

defendant was such that she reposed full faith, trust and confidence in him and that the defendant stood *in loco parentis* to her daughter until her marriage. The complaint prays for a judgment enforcing the trust or trusts alleged by:

(1) Ordering and directing defendant to set aside and hold a sufficient amount of securities or cash equivalent thereof at April 1938 values, in trust for the plaintiffs subject to the August 2, 1937 distribution provisions, to the end that the value of the corpus of such trust when added to the value of the corpus of the irrevocable trust of October 3, 1938, at 1938 valuations, shall be not less than $100,000 at 1938 valuations and which shall include the present equivalent of 500 shares of duPont common as of April 6, 1938 and 300 shares of Visking Corporation capital stock as of the date the defendant received 300 shares of such stock as a stock dividend.

(2) In the alternative ordering and directing defendant to transfer and deliver to Equitable Trust Company, trustee under the irrevocable trust of October 3, 1938, as additional corpus, additional securities or cash to the extent prayed for in paragraph one.

(3) For an accounting.

The defendant makes the following three arguments in support of his contention that the complaint fails to state a claim upon which relief can be granted:

(1) The complaint contains no well pleaded allegations of a declaration of trust.

(2) The allegations in the complaint negate an intent by defendant to create the trusts claimed by plaintiffs.

(3) The complaint alleges a promise to create a trust, unenforceable because of the absence of consideration or a representation that defendant was in the process of creating a trust.

Initially it is conceded that there was no legal consideration supporting any of the transactions here involved. The sole question therefore, is whether plaintiffs' complaint charges that legally complete gifts were made by the defendant in trust or whether

it merely charges a promise to make gifts in trust—the latter being admittedly unenforceable.

■ Defendant argues that, contrary to plaintiffs' legal allegation, no resulting trust can be inferred from the factual allegations of the complaint. Defendant says this is so because (1) every resulting trust requires a transfer and (2) the required intention is never expressed by any words of direct creation. See 4 *Pomeroy, Equity Jurisprudence, (5th Ed.)* § 1031. I agree with defendant that a claim of a resulting trust cannot be inferred from the factual allegations of the complaint. I say this because the allegations negative a transfer. Moreover, plaintiffs themselves allege that defendant by words equivalent to words of direct creation declared that he held property in trust for them. Thus, an allegation is absent which should be present (transfer) and an allegation is present which should be absent (words of direct creation) if plaintiffs intended to allege a resulting trust.

I, therefore, conclude that the complaint does not allége a claim based upon a resulting trust.

Defendant next contends that the complaint contains no well-pleaded allegations of a declaration of trust. The issue is therefore directly presented as to whether plaintiffs' complaint sufficiently alleges the creation of what amounts to an express trust.

■■ In resolving this issue it must be kept in mind that at this stage under our present pleading rules, plaintiffs are only required to state a claim. They need not plead their evidence. See *Morgan v. Wells,* 32 *Del.Ch.* 104, 80 *A.2d* 504. It is true that the complaint contains many allegations which are no more than promises to create or add to a trust. These allegations cannot constitute the basis for a claim because there was admittedly no legal consideraion involved. See 1 *Scott on Trusts,* § 26.2; 1 *Restatement of Trusts,* § 30. Consequently, in order to state a claim plaintiffs must in effect allege that a gift in trust was made—not to be made. Let us see if such allegations appear.

■ In Par. 7 of the complaint it is alleged, inter alia, that in June and July, 1937 the defendant, in connection with the revocable trust,

"* * * declared.[to plaintiff] he would not thereafter exercise his right of amendment or revocation of said trust (including withdrawal of securities from the portfolio thereof) until after consultation with the plaintiff, Estelle Kelley and her consent thereto, and finally, he declared that the trust, with respect to the remaining securities constituting the then corpus thereof * * * should be irrevocable."

The quoted language might be construed to allege an automatic amendment of the revocable trust by virtue of defendant's oral declarations. The question as to whether such could be legally done need not now be considered. I say this because I construe the quoted allegations as merely referring to promises by defendant which are invalid for want of consideration. If the allegations were to be construed to constitute more than language of promise they would be incompatible with the allegations of Par. 11. This is so because the latter allegations set forth that at that time, April 6, 1938, the defendant declared to plaintiff that he was then making a present and irrevocable gift of equitable estates to the plaintiffs in those securities then constituting the portfolio of securities of the revocable trust. This he could not do if he had theretofore rendered the earlier trust irrevocable. I say this because one of the beneficiaries of the earlier so-called revocable trust, plaintiff's daughter, was not of age, and therefore, could not have consented to what amounts to its revocation.

I, therefore, construe the factual language of Par. 7 not to constitute a claim that the revocable trust became irrevocable despite the allegation as to its legal consequence. If my construction is inconsistent with plaintiffs' intention in employing the language quoted in Par.7, leave to clarify by amendment will be granted.

This brings us to the allegations in Par. 11, heretofore quoted, charging that by the memorandum of April 6, 1938 and by contemporaneous verbal declarations the defendant made a present and irrevocable gift in trust for plaintiffs, in an amount sufficient to make the corpus at least $100,000 and including therein 500 shares of duPont common and by later similar declarations 300 shares of Visking Corporation, both at the then existing capitalization.

Defendant says that the written memorandum of April

6, 1938 falls far short of the type of declaration necessary to create an express trust. If the memorandum were the only basis for the complaint and the matter were to be considered at the appropriate stage solely on the basis of the memorandum, I would be inclined to agree that it did not support a finding of an express trust under the principles applicable to such a situation. However, the complaint alleges in very clear language, apart from the epithets, that defendant made oral declarations sounding in language of present gift. Thus, it charges that defendant declared to plaintiff "that he was then there and thereby making a present and irrevocable gift of equitable estate to the plaintiffs." This language is sufficient for pleading purposes.

Defendant argues that the quoted allegation when read with the other factual allegations of the complaint do not fulfill the legal requirement that they "admit of but one interpretation", i. e., a declaration of trust. The difficulty with defendant's objection is that he seeks to have this court, at the pleading stage, test the complaint by standards the court must apply in evaluating the evidence. These same standards do not apply in testing the sufficiency of the allegations of this complaint.

Plaintiffs agree with defendant that the intention of the defendant to create such a trust as is here alleged must, in the language of the Supreme Court in *Bodley v. Jones*, 27 *Del.Ch.* 273, 32 *A.2d* 436, 438: "be evidenced by definite, explicit and unequivocal words, or by circumstances so revealing and compelling as to manifest the intention with all reasonable certainty." Obviously, the court must hear the evidence before it can decide whether the required quantum of proof exists because the complaint does not set forth explicitly the verbal declarations, the surrounding circumstances and the other factors which a trial court considers in deciding whether or not a plaintiff has sustained his burden of proof.

Defendant also argues that the allegations of the complaint demonstrate that the language of Par. 11 constitutes no more than a charge that defendant promised to create a trust of the type alleged. I cannot agree. I believe the complaint charges that a

trust was created by the defendant. The matters discussed by defendant will be proper subjects for inquiry and application when the proof is taken and evaluated.

I conclude that the defendant's motion to dismiss should be denied.

Order on notice.