(No. 14294.—Decree affirmed.)
ROLLIE C. HILL, Appellant, *vs.* LILLIE BELLE BERGER *et al.*
Appellees.

*Opinion filed February 22, 1922—Rehearing denied April 6, 1922.*

TRUSTS—*evidence to establish a resulting trust must be clear, strong and unequivocal.* A complainant who seeks to establish a resulting trust on the ground that his money paid for land the title to which was taken in the name of another has the burden of proof, and such proof, whether circumstantial or direct, must be clear, strong, unequivocal and beyond reasonable doubt; and force is added to the rule when a long time has elapsed, and persons, including the purchaser, who were in a position to know the facts, are dead.

APPEAL from the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

C. E. POPE, and H. F. DRIEMEYER, for appellant.

FRED G. BIERER, and MARTIN & GLENN, (GEORGE P. RAMSEY, and LAWRENCE A. GLENN, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant filed the bill in this case to have certain lands of which Frank Bullar died seized declared to be the property of complainant, for the reason it was alleged the land was purchased with money belonging to appellant and the title taken in the name of Bullar, whereby a trust arose in favor of appellant. Bullar died April 16, 1918, and his wife died four days later. He left surviving him as his only child and heir-at-law, Lillie Belle Berger, and she, Bullar's administrator and his tenant were made parties defendant. The bill alleged, in substance, that appellant is the illegitimate son of Ellen Hill and was born in September, 1886; that when he was eighteen months old, at the solici-

tation of Bullar, who was the uncle of Ellen Hill, she gave him the custody of appellant, and Bullar promised to raise, care for and adopt him; that appellant's mother, from time to time, gave her uncle sums of money to be kept by him for appellant until he arrived at his majority and then deliver it to the appellant, all of which Bullar promised to do. The bill alleges that in June, 1889, Bullar purchased 40 acres of land and paid for it with $400 of the money of appellant which Bullar received from appellant's mother but wrongfully took title in his own name; that in November, 1890, Bullar sold that 40 acres of land for $860 and purchased an 80-acre tract with $625 of the money, again taking title in his own name; that in September, 1902, Bullar sold said 80-acre tract for $3200 and with $3000 of the money received he bought 107½ acres, the title to which he took in his own name and which he died seized of, except ten acres, which he sold before his death. The bill alleges appellant's mother died when he was three years old; that he continued to live with Bullar till he was of age, but Bullar never paid him any money received from appellant's mother or conveyed to him any lands purchased with appellant's money; that appellant never knew the facts about Bullar's receipt of the money from his mother or of its investment in land until after Bullar's death. The prayer of the bill is that the land be declared to have been held by Bullar in trust for appellant, and that Lillie Belle Berger be required to execute a conveyance of the same to him. The bill was answered, denying the purchase of any land by Bullar with money received for appellant from his mother, and averring all the lands purchased by Bullar were paid for with his own money. The cause was referred to a master in chancery to take the evidence and report his conclusions. The master reported that if the admissions of Bullar proven by the appellant were themselves sufficient to sustain the bill a decree should be entered in his favor, but as there was no evidence of the payment of any money by ap-

pellant's mother to Bullar except his admissions, and the other evidence showing appellant's mother could not have given Bullar $400 unless she received it from the father of her child, the evidence to establish the trust is not so clear, strong and unmistakable as to be sufficient to entitle appellant to the relief prayed. Objections were filed to the master's report, and he made a supplemental finding that the appellant's mother gave Bullar $100 for appellant which went into the purchase of the land, and he recommended a decree awarding appellant a one-fourth interest in the land. The court overruled appellant's exceptions to the report and to the supplemental report of the master and entered a decree dismissing the bill for want of equity.

Four witnesses testified on behalf of appellant to admissions made to them about the time Bullar bought the first tract of land, that appellant's mother had given him the money he paid for the land. Some of them said he stated the amount as $400, and others could not be certain of the amount he said he received. He stated he invested it in land because he thought that safer than to try to keep the money. Appellant was about eighteen months old when Bullar took him, about March, 1888. Ellen Hill married in March, 1889, and died in October of the same year. At the time Bullar took appellant he owned no land but was a renter. He owned some horses and other personal property of small value. Appellant's mother lived only about a year and a half after appellant was taken in the home of Bullar. The man she married was a poor man, and it is not claimed he furnished any money to be given Bullar for appellant. The first tract of land bought by Bullar for $400 was purchased in June, 1889, about fifteen months after he took appellant in his home, and if the money he paid for the land ($400) was appellant's money, it was given him by appellant's mother before that time. It must be conceded that the admissions appellant's witnesses testified Bullar made about buying the land with appellant's money are

definite and strong. There is no other proof of any kind of that fact, but appellees' proof is equally clear and definite that Ellen Hill, her family and relatives, were very poor; that she had no source of income except her wages as a domestic servant, which ranged from $1 to $2.25 per week when she was employed. A considerable part of the time she was not employed and lived with different of her relatives. It is clear she could not have earned the $400 it is alleged she gave Bullar for appellant, and counsel for appellant practically concede this but claim she may have received it from Bruce Cox, the father of her child. The evidence shows Cox attended school until he was eighteen and then became a clerk in a grocery store. He was about twenty years old when appellant was born, and lived with his mother, who was a widow. There is some testimony that Ellen Hill received $100 from Cox, or from someone for him, as a compromise of her right of action against him for bastardy, but there is no proof she ever received any other sum. Counsel for appellant contend that as the witnesses did not agree as to the time she received the $100 there must have been more than one payment of that amount received by her, but we do not think the proof warrants the conclusion that she ever received more than $100 from that source. It is uncertain from the evidence whether she gave that amount to Bullar or not. There was testimony that both Bullar and his wife stated she had given them $100, and that Bullar said he had invested it in the purchase of a young mare. There was also the testimony of witnesses that at the time Ellen Hill received the $100 both she and her child were badly in need of shoes and clothes, and that she spent at least part of it in purchasing clothes and shoes for herself and baby.

In our opinion the evidence shows Ellen Hill could not have given Bullar $400 from the time she left her child with him before her death. The record therefore presents the peculiar situation that Bullar admitted he received from

Ellen Hill $400 for appellant and invested it in land, but it also shows that she had no money and no source from which she could procure money except for her services as a domestic servant, and that part of her time she was out of employment and lived with relatives. Practically the proof on one hand is that Bullar admitted he received the money from Ellen Hill, and on the other hand that she did not give it to him because she never had it. The conversations and incidents testified to by the witnesses occurred thirty or more years ago. The burden of proof was on appellant to establish a resulting trust by proving that his money was paid for the purchase of the land, and such proof, whether circumstantial or direct, must be clear, strong, unequivocal and beyond reasonable doubt. (See *Orear* v. *Farmers State Bank,* 286 Ill. 454, *VanBuskirk* v. *VanBuskirk,* 148 id. 9, *Dodge* v. *Thomas,* 266 id. 76, *Akin* v. *Akin,* 276 id. 447, *Lord.* v. *Reed,* 254 id. 350, and many other cases to same effect.) Force is added to that rule when a long time has elapsed and persons in a position to know the facts are dead. In *Orear* v. *Farmers State Bank, supra,* the court, in giving the reasons for requiring strict and clear proof in such cases, said: "The policy of the law requires that everything which may affect title to real estate shall be in writing; that nothing shall be left to the frailty of human memory or as a temptation to perjury, and wherever this policy of the law has been broken in upon and parol evidence admitted, the courts have been ever careful to examine into every circumstance which may affect the probability of the alleged claim, as the lapse of time, the means of knowledge and circumstances of the witnesses, and will not grant the relief sought where the claim has been allowed to lie dormant for an unreasonable length of time or where the evidence is not very clear in support of the alleged right, especially where no claim has been set up during the lifetime of the trustee but is raked up and charged against the heirs, who may not be supposed to

know anything about it or be able to defend it, as their an-
cestor might have done."

We cannot say the decree is palpably contrary to the
evidence, and it is affirmed.                    *Decree affirmed.*