## Springfield Lumber Company, Appellant, v. James P. Shaughnessy et al., Appellees.

1. FRAUDULENT CONVEYANCES—*effect of conveyances between husband and wife.* In a suit to reach real property transferred from husband to wife after the extending of credit to the husband upon the strength of his ownership thereof, where no claim is made that the husband owed the wife a valid and subsisting debt of which payment would be exacted without reference to the fortunes of the parties, the conveyance must be sustained, if at all, upon the theory of a resulting trust.

2. TRUSTS—*creation of resulting trust.* When one person has the money of another to invest for the owner and uses it to purchase land and takes the title in his own name, a resulting trust is created and the law will hold him to be a trustee for the owner of the money used in buying the land, the trust thus created being called a resulting trust.

3. TRUSTS—*essentials to establishment of resulting trust.* The evidence to establish a resulting trust in land must be full, clear and satisfactory that the title was taken by the grantee under such circumstances that the trust resulted at once; and it must clearly appear that it was the intention of the parties that the money should be invested for the benefit of the owner and that it was not the intention of the parties that the transaction should constitute either a gift or a loan to the party in whose name title was taken.

4. FRAUDULENT CONVEYANCES—*effect of wife's permitting her property to stand in husband's name.* Where a wife permitted the title of property to remain in her husband for a long period, she thereby consented that he might obtain credit upon the strength of his apparent ownership as it appeared of record.

5. FRAUDULENT CONVEYANCES—*liability to husband's debts of property in husband's name but claimed by wife.* Where one of the lots comprising certain real estate, the title to which was taken in a husband's name, was purchased with money borrowed from his father and from a building and loan association on stock in the husband's name and the original payment was made on the other lot with money borrowed upon the first lot and there was nothing in that transaction upon which to base a presumption that it was the intention of the parties to create a resulting trust in favor of the wife, the property should be subjected to the payment of a judgment against the husband on a debt contracted on the strength of his ownership of the property, regardless of a conveyance to the wife made after the debt was contracted.

Appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded with directions. Opinion filed April 22, 1922.

L. E. STONE, for appellant.

W. E. FAIN and GRAHAM & GRAHAM, for appellees.

MR. JUSTICE HEARD delivered the opinion of the court.

This is an appeal from a judgment entered in the circuit court of Sangamon county, dismissing appellant's bill for want of equity and assessing costs against appellant. Appellant, complainant below, filed its bill in chancery, alleging, in substance, that the defendant James P. Shaughnessy, husband of the defend-

ant Catheryn Shaughnessy, transferred by deed to his wife two pieces of real estate in the City of Springfield; that the title of record stood in his name; that because such title stood of record in his name subject to certain incumbrances, complainant extended credit to defendant James P. Shaughnessy; that after such credit had been extended, defendant James P. Shaughnessy, by deeds, made a pretended transfer of said real estate to one John P. McNichols, who in turn deeded them to James P. Shaughnessy's wife, the defendant Catheryn Shaughnessy, thereby rendering said James P. Shaughnessy execution proof; and that such conveyances were made for the purpose of defrauding complainant.

Defendant Catheryn Shaughnessy filed her separate answer setting forth that she was the real owner of the property in question; that it was paid for by her and denying that there was any pretended transfer for the purpose of defrauding complainant as creditor of James P. Shaughnessy.

The finding of the master in chancery was that the defendant Catheryn Shaughnessy allowed the defendant James P. Shaughnessy to retain the record title to the property, and that because the complainant extended credit to James P. Shaughnessy on the strength of the record title being in him, his wife, Catheryn Shaughnessy, was estopped from denying that said real estate is owned by her husband.

The circuit court reversed this holding of the master and entered a decree finding that the record title in the premises was in James P. Shaughnessy; that the equitable title was in Catheryn P. Shaughnessy, his wife; that the real estate was paid for by money supplied by her; that she made no representations to the complainant as to the ownership of James P. Shaughnessy to the real estate and in no way misled it or induced it to give credit to him on account of ownership of the property and in no way suggested or represented to complainant that title was in him, or that any

credit should be given to him on the strength of ownership of the said real estate; and that the transfer of the legal title to Catheryn Shaughnessy was made for the purpose of protecting her rights in the real estate and not for the purpose of hindering or defrauding the complainant herein.

Exceptions to the master's report were sustained by the chancellor and complainant's bill dismissed with costs.

Catheryn Shaughnessy testified that: "The first piece of property to which title was taken by either myself or my husband since our marriage is on South Second Street. That is Lot Fourteen (14), in Block Two (2), John Shaughnessy's Addition. I think it was bought in about 1903. Mr. Shaughnessy bought it from his father. The purchase price was $800. * * * When we bought the first property from Mr. Shaughnessy's father we had his father lend him money to make the first payment on the place, then we had to pay him so much money before he got his money out of the place. We borrowed it out of the Building and Loan to pay his father. Those payments were made by me at that time; my husband had no property or money at all." She testified that all the money paid upon this loan was from rents and from her parents' estate, and that the second property was purchased by money borrowed from the Building and Loan Association and that their loan was also paid from the rents and her parents' estate. The first property was conveyed by deed to James P. Shaughnessy September 22, 1898, the consideration expressed in the deed being $1,000. A mortgage was given by Shaughnessy to the Building and Loan Association September 23, 1898. The Building and Loan Association stock was issued in the name of James P. Shaughnessy.

The title to the property stood upon the record in the name of James P. Shaughnessy until December 13, 1916, when it was deeded to John McNichols. Both of

the Shaughnessys testified that they always supposed
that the title was in Catheryn Shaughnessy until about
the time of the making of the latter conveyance.  Mc-
Nichols paid nothing for the property and only took
title for the purpose of conveying it to Catheryn
Shaughnessy.  Upon this question McNichols testi-
fied: "She told me about their trouble, and I think
she said he was about to be sued.  I took the deed to
protect her, to keep the creditors from reaching him,
if it would take it away from her.  He mentioned the
fact that his business did not go exactly right in some
way, and there was something about getting the prop-
erty out of his name so it could not be reached by a
suit."

. In reply to the question, "Mrs. Shaughnessy, you
have been asked about the McNichols deed.  Tell why
the property was deeded to Mr. McNichols?"  Mrs.
Shaughnessy testified: "Well, I had this money in
and he got in trouble.  They took his job and money
and everything from him and I wanted to protect what
I had.  I didn't know what they would do afterwards,
and that is the reason I deeded it over to Mr. McNich-
ols.  It was deeded to McNichols for me."

In *Bartels v. Zimmerman,* 293 Ill. 154, it was said:
"It is the established rule of law in this State that a
debtor may prefer a creditor or creditors and that
such preference is valid notwithstanding the claims of
other creditors, provided the debt preferred is actual
and the property transferred does not greatly exceed
the amount of the claim and the transaction is not a
mere devise to secure an advantage to the debtor or to
hinder, delay or defraud other creditors.  This rule
applies to members of the family, but where an imme-
diate member of the family is preferred as a creditor
there must be clear and satisfactory proof of a valid
and subsisting debt which would be enforced and pay-
ment exacted regardless of the fortune or misfortune
of the debtor.  (*Schuberth v. Schillo,* 177 Ill. 346; *Dill-*

*man v. Nadelhoffer*, 162 Ill. 625.)   While a conveyance
between parties related to each other by blood or mar-
riage does not, of itself, establish fraud in the transfer,
the fact of relationship may properly be considered
in connection with other evidence tending to impeach
the transaction.  (*Schroeder v. Walsh*, 120 Ill. 403.)
Intent to defraud is sometimes implied from the rela-
tionship of the parties in connection with other cir-
cumstances.' (20 Cyc. 487.)''

There is no claim in this case that Mr. Shaughnessy
owed his wife a valid and subsisting debt of which 'pay-
ment would be exacted without reference to the for-
tunes of the parties, so the conveyance in question, if
upheld, can only be upheld on the theory of a resulting
trust.

When one person has the money of another to invest
for the owner and uses the money to purchase land
and takes title in his own name, a resulting trust is
created and the law will hold him to be a trustee for
the owner of the money used in buying the land, and
the trust thus created is called a resulting trust.   The
evidence to establish a resulting trust must be full,
clear and satisfactory, that the title was taken by the
grantee under such circumstances that the trust at
once resulted.   It must clearly appear that it was the
intention of the parties that the money should be in-
vested for the benefit of the owner and that it was not
the intention of the parties that the transaction should
constitute either a gift or a loan to the party in whose
name title is taken.  *Francis v. Roades,* 146 Ill. 635;
*McCarthy v. McCarthy,* 289 Ill. 365; *Scott v. Cornell,*
295 Ill. 508; *Hartley v. Hartley,* 279 Ill. 593.

In *Goelz v. Goelz,* 157 Ill. 33, it was said: ''The rule
is well settled that where the evidence is doubtful and
not entirely clear and satisfactory, or it is capable of
reasonable explanation upon theories other than that
of the existence of an implied or a resulting trust, such
trust will not be held to be sufficiently established to

entitle the beneficiary to a decree declaring and enforcing the trust.'' In *Hill v. Berger*, 302 Ill. 312, it is said: ''The burden of proof was on appellant to establish a resulting trust by proving that his money was paid for the purchase of the land, and such proof, whether circumstantial or direct, must be clear, strong, unequivocal and beyond reasonable doubt.'' In Wait on Fraudulent Conveyances and Creditors' Bills (2d Ed., sec. 305) it is said: ''If a wife permits her husband to take title to her lands and to hold himself out to the world as the owner of them, and to contract debts upon the credit of such ownership, she cannot afterwards, by taking title to herself, withdraw them from the reach of his creditors, and thus defeat their claims.''

In the present case the indebtedness for which the judgment was rendered accrued in the conduct of the business of James P. Shaughnessy, and, according to the testimony of appellant's witnesses, was incurred on the strength of his apparent ownership of the property in question. Appellant introduced testimony tending to show that when seeking to incur the indebtedness Shaughnessy represented to appellant's representatives that he was the owner of the property. Shaughnessy, however, denies making the representation. Whether the representation was made or not, Catheryn Shaughnessy permitted the title of the property to remain in her husband, of record, from 1898 and thereby consented that he might obtain credit on the strength of his apparent ownership as it appeared of record. *Hauk v. Van Ingen,* 196 Ill. 20.

In the last-mentioned case the court cites with approval from *Clark v. Rosenkrans,* 31 N. J. Eq. 667, as follows: ''A claim by a wife against her husband, first put in writing when his liabilities begin to jeopardize his future, should always be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties

alone, uncorroborated by other proof, should be rejected at once, unless their statements are so full and convincing as to make the fairness and justness of the claim manifest.''

In *Smith v. Willard*, 174 Ill. 538, it was said: ''The whole foundation of a resulting trust is the ownership and payment of purchase money by one and the taking of title in the name of another, and the presumption founded on such transaction of the intention of the parties that such trust should be the result.''

There is nothing in the evidence in this case, however, upon which to base a presumption that at the time of the taking title to the first lot, September 22, 1898, it was the intention of the parties that a resulting trust should be created. Catheryn Shaughnessy paid no money at that time and at that time put no money into the venture. The lot was purchased from the husband's father and the purchase price consisted of money borrowed from the father and from the Building and Loan Association on stock in the husband's name. The original payment on the second lot at the time of taking title thereto was money borrowed upon a mortgage on the lot first purchased, and there is nothing in that transaction upon which to base a presumption that it was the intention of the parties that a resulting trust in favor of the wife should be created.

That a resulting trust was created not having been shown by the clear and convincing proof required by law and appellees themselves having testified that the conveyances in question were made for the purpose of preventing its being reached by James P. Shaughnessy's creditors, the decree of the circuit court was erroneous, and the property in question should be subject to the mortgage of the Sangamon Savings and Homestead Association, and subject to the homestead of the Shaughnessy's (if they now have a homestead therein) subjected to the payment of appellant's judgment.

The decree is reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded with directions.*