480

HARRY R. BODLEY, Executor of the Estate of William Fortner Deceased,

*Defendant Below, Appellant,*

*vs.*

RHODA E. JONES, also known as Rhodie E. Jones,

*Complainant Below, Appellee.*

*Supreme Court, On Appeal, November 6, 1947.*

RICHARDS, C. J., and SPEAKMAN, TERRY and CAREY, JJ., sitting.

*William Prickett,* for appellant.

*Harry K. Hoch* and *Philip Cohen,* for appellee.

TERRY, Judge, delivering the opinion of the court:

This is an appeal from a decree of the Court of Chancery impressing a trust in favor of the appellee upon the proceeds of a certain bond and mortgage.

The appellee seeks to enforce an alleged resulting trust. She claims to be the real owner of $3500 invested in a bond and mortgage by William Fortner during his lifetime.

The appellant is Fortner's executor.

The complainant in her bill alleges, among other things, that William Fortner at the time of his death was the legal owner of a bond and mortgage in the amount of $3500, executed by Royden Caulk of New Castle County, dated October 8, 1935, and of record in the Recorder's office, in and for New Castle County. On October 16, 1935, Fortner executed, under his hand and seal, and delivered to the complainant the following instrument in writing:

"Blackbird, Del., October 16th, 1935

"To Whom It May Concern:

"This is to certify that the money invested in the Royden Caulk bond and mortgage for Thirty-five Hundred Dollars ($3500.00) belonged to Miss Rhodie E. Jones of Appoquinimink Hundred and in the event of my death this bond and mortgage is to be turned over to her by my executor if I have not done so previously.

"Witness my hand and seal this sixteenth day of October, A. D. 1935.

(Seal)   Wm. Fortner.

"Witness:

"W. W. Hynson."

It is further alleged that Fortner died on July 21, 1940, and did not during his lifetime assign or turn over the Caulk bond and mortgage to the appellee; nor has his executor done so since his death.

The prayers are that the Caulk bond and mortgage amounting to $3500 be decreed to be the property of Rhoda E. Jones, and that the respondent be directed to assign the bond and mortgage to her, and, further, that the respondent be directed to account to the complainant for any interest received by him thereon.

The respondent in his answer alleges: (1) that the money invested in the Caulk bond and mortgage is not the money of the complainant; (2) that the instrument set out in the bill of complaint did not transfer title to said bond and mortgage to the complainant; (3) that the interest accruing on the bond and mortgage was collected by Fortner during his lifetime, and was, at all times, received and used by him for his own purposes and benefit; and (4) that from the date of the execution of the bond and mortgage no demand was made by the complainant for the payment to her of interest that accrued thereon.

Upon a motion for a decree notwithstanding the answer the learned Chancellor concluded that the fair and reasonable inference to be drawn from the language of the October 16th paper writing (as set forth in the bill of complaint) was that Fortner, by the execution thereof, intended to declare himself a trustee for the benefit of Rhoda E. Jones, the complainant. 26 *Del. Ch.* 218, 27 *A.2d* 84. Prior to the entry of the final decree the bond and mortgage was paid in full. The decree, therefore, was that the Thirty-five Hundred Dollar fund be impressed with a trust in favor of the complainant, and the respondent was ordered and directed to pay to the complainant that sum, together with the sum of $84.50, representing accrued interest from the date of the respondent's qualification as executor.

The respondent appealed to this court. The appellee argued before us, as well as in the court below, that the language set forth in the paper writing of October 16th was entirely adequate as a declaration of trust for her benefit. We found, however, that the language used was

insufficient for that purpose. We said (27 *Del. Ch.* 273, 32 *A.2d* 436) that it seemed to us from the state of the pleading that a more reasonable interpretation would be to say that (1) Fortner, deceased, intended to make a gift *in futuro,* or (2) that he attempted to make a testamentary disposition not in a manner authorized by law. We found the language to be indicative only of a written acknowledgement of a type of trust called a resulting trust raised by implication of law and presumed to have been contemplated by the parties in favor of the person furnishing the consideration for the transaction. In accordance with this view, a reversal was entered and the cause remanded to the court below for such other proceedings as might be deemed necessary. However, we indicated (27 *Del. Ch.* 273, 32 *A.2d* 436) that if it be proved that the money invested in the bond and mortgage was the appellee's money, as the paper writing declared, she would be entitled to a decree in the absence of countervailing circumstances. On the other hand, if it be proved that the money so invested was the money of Fortner, in the absence of facts and circumstances showing clearly and unequivocally the intention of the deceased to declare a trust in the appellee's favor, the appellee would not be entitled to relief.

On October 20, 1943, a final hearing was commenced in the court below. The complainant did not pursue her previous contention; that is, that the paper writing of October 16th evidenced a declaration of trust for her benefit. She contended that the instrument evidenced an implied or resulting trust, and in support of this contention relied upon the language of the instrument, together with the testimony of W. W. Hynson, a witness thereto. Hynson testified that during October, 1935, he was cashier of the Fruit Growers National Bank & Trust Company of Smyrna; that he knew William Fortner, and had previously drawn a will for him; that on October 16, 1935, Fortner asked him to draw the paper writing (set out in the bill of complaint) and at the time the instrument was prepared Fortner told him the $3500 invested in the Caulk mortgage belonged to Rhoda

E. Jones, and that he (Hynson) was to deliver, as Fortner's executor, the paper writing to Miss Jones in the event Fortner had not done so during his lifetime.

The respondent upon the conclusion of the complainant's case moved that the bill of complaint be dismissed, for the reason that her previous contention, as advanced by her solicitor both at the arguments (1) before the learned Chancellor for a decree notwithstanding the answer and (2) before this court on the first appeal that the October 16th paper writing evidenced a declaration of trust for her benefit, amounted to an irrevocable judicial admission which is conclusive upon her and cannot be disavowed. The motion to dismiss was denied.

The respondent produced several witnesses in support of his position that the money invested by Fortner in the Caulk bond and mortgage was not the money of, nor did it belong to, the complainant; rather, it was the money of, and belonged to, Fortner.

During the presentation of the respondent's case the complainant was called as a witness, but was not present. A subpoena had been issued for her the previous day, October 19th. The subpoena could not be served, because she had previously absented herself from the jurisdiction. It appears that her solicitors, previous to October 19th, had stated to her that she need not appear at the October 20th hearing. At the close of the day the court adjourned the hearing until November 3rd, suggesting to the complainant's solicitor that she be present at the adjourned November 3rd hearing in order that she might be cross-examined by the respondent under *Paragraph* 4687 of the *Revised Code of* 1935. The complainant was not present November 3rd, although she had learned prior thereto that she was wanted as a witness. Upon the completion of the testimony taken November 3rd, the Chancellor stated that the case would not be disposed of until the complainant had appeared as a witness. The hearing was then adjourned

until November 10th. Because of her non-appearance at the October 20th hearing, the respondent moved that the bill of complaint be dismissed under the equitable maxim of unclean hands. This motion was denied. The motion to dismiss was renewed at the adjourned November 3rd hearing. The respondent contended that the complainant's absence amounted to an attempt on her part to obstruct justice. The court deferred action on the motion. At the adjourned November 10th hearing the complainant appeared and was fully examined by the respondent. Upon the completion of the respondent's case he renewed his motion to dismiss as previously made November 3rd. The motion was again denied.

The substance of the respondent's case may be briefly summarized as follows:

The complainant's father was a farmer in Blackbird Hundred and apparently not in very prosperous circumstances. His farm property was mortgaged and subsequently sold on foreclosure proceedings. The complainant's mother died in 1932, and, since then, she has lived with her father and kept house for him without any compensation other than the proceeds from the poultry raised on the farm. She completed her grammar school education but never entered high school. During the year 1918 she worked in a canning factory. Since 1918 she has not been employed away from the farm in any capacity until 1943 when she worked at the Bellanca Aircraft Factory for a part of that year. During 1936 the complainant had a balance of about $200 on deposit to her credit in Fruit Growers Bank at Smyrna; and during a period of the same year she had approximately $600 on deposit in the National Bank of Smyrna. Royden Caulk, in the fall of 1935, applied to Fortner for a loan to be secured by his bond and mortgage. Caulk did not know in any respect the complainant in the transaction. She was not present when the papers were executed and delivered, and Fortner gave his personal check to his attorney for the money to be invested. Fortner died

July 21, 1940. The interest on the bond and mortgage had been paid to Fortner from time to time by Caulk's check until the respondent was appointed his trustee in insanity proceedings in January, 1940. Three checks for interest on the bond and mortgage drawn to the order of Fortner are in evidence, not any of which were endorsed by the complainant. The checks had been deposited to Fortner's credit in bank. One check for interest given by Caulk to the respondent as trustee for Fortner after January, 1940 was produced. It had been deposited in bank to the credit of the trustee. Numerous checks drawn by Fortner to various persons and his checkbook stubs had been destroyed by the respondent prior to the hearing. However, before destroying the checks, the respondent had examined them and found none drawn to the order of the complainant, or any checkbook stub indicating that any checks had been so drawn. The respondent admitted, however, that numerous checks had been drawn by Fortner prior to 1935 to his order, or otherwise, and cashed by him. On October 1, 1940 the complainant probated a claim for the principal debt of the bond and mortgage and filed it with the respondent as executor of Fortner's estate, but she at no time made any demand upon him for the interest on the $3500, which she claims belonged to her, nor did she ever demand an assignment of the Caulk bond and mortgage while the respondent was acting as Fortner's trustee between January, 1940, and July, 1940, when Fortner died.

Upon a consideration of the evidence in its entirety, the learned Chancellor concluded, 28 *Del. Ch.* 191, 39 *A.* 2*d* 413, 415: "conceding the possible inference that Rhoda E. Jones (complainant) could not have saved $3500 from her earnings in raising poultry or otherwise prior to October 8th, 1935, other evidence is necessary to rebut the complainant's case." Based upon this determination a final decree was entered in the identical language as the original decree heretofore set out.

Upon the entry of the final decree the respondent filed

a petition praying that a rule issue directing the complainant to show cause why the case should not be reopened and a new trial granted, or that the defendant be given leave to file a bill of review. The petition was accompanied by affidavits the substance of which is to the effect that the $3500 invested by Fortner in the Caulk bond and mortgage was obtained by him by reason of the call and payment in 1935 of four one thousand dollar bonds then in his possession, which were originally purchased by Fortner in 1927 and 1929. The bonds were issued upon the credit of the Town of Smyrna.

The prayers of the petition were denied. It was held that the new evidence relied upon by the respondent, if established, would not have changed the result even though a new trial be granted.

From the final decree and the order denying the bill of review the respondent has appealed. The substance of the assignments of error relied upon is the following:

1. The court below erred in granting a decree based upon a resulting trust, since a resulting trust was not set up in the bill of complaint.

2. The court below erred in not dismissing the bill of complaint for the reason that the previous contention of the appellee, as advanced by her both at the arguments (1) before the learned Chancellor for a decree notwithstanding the answer and (2) before this court on the first appeal that the October 16th paper writing evidenced a declaration of trust for her benefit, amounted to an irrevocable judicial admission which is conclusive upon her and cannot be disavowed.

3. The appellee cannot recover upon the theory of a resulting trust, for the reason that she has not proved that the $3500 invested by Fortner in the Caulk bond and mortgage belonged to her.

4. The court below erred in not invoking the equitable maxim of unclean hands against the appellee.

5. The court below erred in not granting a bill of review.

As to the first assignment, it should suffice to say that the bill alleges sufficient facts upon which a decree could be entered based upon a resulting trust. 27 *Del. Ch.* 273, 32 *A.* 2*d* 436.

In considering the second assignment we are urged to invoke the doctrine of judicial admissions against the appellee and to say that any legal deductions or contentions made by her solicitor during his argument on her motion for a decree notwithstanding the answer amounted to such an admission that cannot be renounced by her at any later stage in the proceedings. In other words, the appellee's original position must be maintained; that is, that the paper writing of October 16th evidenced a declaration of trust in her favor, or that the $3500 invested by Fortner in the Caulk bond and mortgage was the money of, and belonged to, Fortner. A motion to dismiss notwithstanding the answer is analogous to a demurrer. Inferences or arguments are never admitted based upon an alleged interpretation of an instrument when the instrument itself is set forth in the pleadings, and especially so when the interpretation assumed is repugnant to the language employed. We said upon the first appeal, 27 *Del. Ch.* 273, 32 *A.* 2*d* 436, that the language of the paper writing was insufficient for the purpose of establishing an express trust. It made little, if any, difference that the appellee originally predicated her argument upon such a theory. The pleadings are not sufficient to bear out such a contention, and, therefore, any admission in this respect could not be binding upon her at a subsequent hearing upon the merits, or otherwise. It should be said that when a paper writing such as the October 16th instrument is set out in verbatim in the bill of complaint, and relied upon as a basis for recovery, any decree subsequently entered in favor of the complainant must of necessity correspond with the allegations in the

bill of which the paper writing is a part. *Cloud v. Whiteman,* 2 *Del. Ch.* 23.

The third assignment concerns the question of proof. We will state first the principles of law as to the creation of resulting trusts, and, second, the character of proof required to establish them. We will then consider the evidence offered in the light of those principles, and decide whether a resulting trust is thereby created in favor of the appellee as to the fund mentioned. It is axiomatic that the doctrine of resulting trusts is founded upon the presumed intentions of the parties. 65 *C.J.* 256. A person who undertakes to establish a resulting trust assumes the burden of proof. 26, *R.C.L. p.* 1229; *Dixon v. Dixon,* 123 *Md.* 44, 90 *A.* 846, *Ann. Cas.* 1915D, 616. Payment or advance of purchase money by the party claiming the trust before or at the time of the purchase is indispensable. 3 *Scott on Trusts,* (1939 *Ed.,* 2303;) *Hollida v. Shoop,* 4 *Md.* 465, 59 *Am. Dec.* 88. It is held in all cases that the payment or ownership of a fund at the time of investment, which is the very foundation of the trust, must be made out by plain, direct and unequivocal evidence. *Hill v. Berger,* 1922, 302 *Ill.* 312, 134 *N.E.* 721; *Spring v. Spring,* 1930, 210 *Iowa* 1124, 229 *N.W.* 147; *Bodley v. Jones* (see our previous opinion) 27 *Del. Ch.* 273, 32 *A.* 2d 436; *Flying Squadron Foundation v. Crippen,* 201 *Ind.* 482, 169 *N.E.* 843.

With these legal principles in mind we have reviewed the evidence in its entirety. The complainant's evidence in part consists of a written admission against interest on the part of Fortner, as set out in the October 16th paper writing. This evidence is of a highly satisfactory character, although it does not render other proof of the fact contained therein incompetent. In the absence of opposing evidence it is sufficient to establish the fact admitted. Cogent proof is required to overcome the effect of such a deliberate admission. 22 *C.J., page* 424; 31 *C.J.S., Evidence,* § 382; *Simeone v. Lindsay,* 6 *Pennewill* 224, 65 *A.* 788; *Govin v. De Miranda,* 140 *N.Y.* 474, 35 *N.E.* 626. The testimony

of Hynson, the complainant's witness, merely corroborates in substance that which is contained in the paper writing.

The question is, Should we consider the appellant's evidence to be of such deserving weight and import to successfully rebut Fortner's solemn admission that the $3500 invested by him in the Caulk bond and mortgage belonged to the appellee? The appellant asserts that when the actualities of this case are understood in the light of all the circumstances, the true import to be had from the paper writing of October 16th would be to say that Fortner, by reason of the execution thereof, attempted to make a gift to the appellee *in futuro*, or to make a testamentary devise to her not in a manner authorized by law. This assertion is so, he contends, for the reason that the only inferences deductible from the appellant's evidence is that she did not have $3500 to invest in the Caulk bond and mortgage in October, 1935. We find the appellant's evidence in this respect to be entirely negative in character, thus furnishing the foundation for inferences alone that lead far into the field of speculation and conjecture. Admitting arguendo the appellee's inability to have saved $3500 from her earnings up to and including October, 1935, yet can such proof be conclusive as to her financial wealth in October of that year? We do not think so. The appellant did not pursue his right to cross-examine the appellee (under the provision of *Paragraph* 4687 of the *Revised Code of* 1935) concerning her financial transactions with Fortner, and she did not volunteer information in this respect when testifying as the appellant's witness. We do not know from what source the appellee obtained the $3500 invested in the Caulk bond and mortgage, nor do we know how or when Fortner became possessed of the same. She might have acquired it by gift, or under a bequest, or otherwise, prior to 1935. The distinguishable feature between this case and the case of *Hill v. Berger,* 302 *Ill.* 312, 134 *N.E.* 721, and other cases relied upon by the appellant, is that here we have a written instrument evidencing a solemn declaration against interest, whereas in the cases cited the admissions against interest,

if any, are oral and the witnesses were compelled to rely upon memory of what occurred and what was said years before the litigation. Cogent proof has not been produced to overcome the legal significance of the solemn declaration before us. We feel that the appellee has made out a clear case involving a resulting trust.

The fourth assignment concerns the equitable maxim "he who comes into equity must come with clean hands." The respondent urges under this assignment that the complainant, in absconding from the jurisdiction prior to the October 20th hearing and staying without the same until the adjourned November 10th hearing, thus evading service, violated the spirit of the maxim, and that the court below should have denied her any relief. Reprehensible conduct on the part of a party litigant which violates the fundamental concepts of equity jurisprudence will not be tolerated. A court of equity is a court of conscience. Righteous conduct and fair dealing by the litigants is the very backbone of the maxim. Litigants seeking the aid of the court must not only do so with clean hands, but must keep them clean after entry and until the final determination of the cause. When one files a bill of complaint seeking to set the judicial machinery in operation and to obtain some remedy has violated conscience or good faith or other equitable principles in his conduct, then the doors of the court of equity should be shut against him. The court should refuse to interfere on his behalf to acknowledge his right or to award him a remedy. 2 *Pomeroy Equity Jurisprudence*, (*5th Ed.*) Sec. 397; 1 *Story Equity Jurisprudence*, (*14th Ed.*) *Sec.* 98; *Gluck v. Rynda Development Co.*, 99 *N. J. Eq.* 788, 134 *A.* 363, affirmed 100 *N. J. Eq.* 554, 135 *A.* 917; *Sharpless-Hendler Ice Cream Co. v. Davis*, 17 *Del. Ch.* 161, 151 *A.* 261.

The mere fact that a respondent has not in his answer alleged the delinquency, fraud or misconduct of a complainant does not preclude the court from granting relief. The court is so jealous in guarding itself against such misuse

that it will *sua sponte* apply the maxim whenever it discovers the unconscionable conduct. The application of the maxim is not a matter primarily of defense. It is not applied to favor a party litigant; rather, it is a rule of public policy. *Sharpless-Hendler Ice Cream Co. v. Davis,* 17 *Del. Ch.* 321, 155 *A.* 247; *Bell & Howell Co. v. Bliss,* (7 *Cir.*) 262 *F.* 131.

The facts relevant to this assignment have been previously stated. The question is, Should the court below have invoked the maxim and thereby denied any relief to the appellee?

The appellee should not have absented herself from the jurisdiction, and most certainly she should have appeared at the November 3rd hearing. A dismissal of the bill at that time would have clearly fallen within the scope of the maxim. The appellee appeared and was examined in full by the appellant at the adjourned November 10th hearing, and after a consideration of all the facts and circumstances the learned Chancellor concluded that the appellee was ignorant of judicial procedure, and that he was not satisfied that her motives in absenting herself from the jurisdiction were really improper. Whether or not our opinion coincides with that of the court below regarding the appellee's motives in absenting herself from the jurisdiction seems to be of little import. The bill was not dismissed on November 3rd. She appeared on November 10th. She was fully examined by the respondent. We are unable to find any injury whatsoever that the respondent sustained by reason of her conduct. Of course, the fundamental requisite in determining whether a party is in court with clean hands is the moral intent and not the actual injury done; nevertheless, in applying the maxim regard at all times should be had for the doctrine that improper acts committed on the part of a complainant seeking the aid of the court of equity should not be the sole cause of the denial of relief, if no injury whatsoever resulted to the respondent therefrom. 30 *C.J.S., Equity,* § 95, *p.* 483; 1

*Story Eq. Jur.*, (14*th Ed.*) p. 98; *Gluck v. Rynda Development Co.*, 99 *N. J. Eq.* 788, 134 *A.* 363, affirmed 100 *N. J. Eq.* 554, 135 *A.* 917. We, therefore, conclude that the learned Chancellor was not in error in refusing to dismiss the bill of complaint under this assignment.

Under the fifth assignment it is contended that the court below should have granted the respondent leave to file a bill of review. Conceding the truth of the evidence contained in the affidavits in support of the petition, yet it cannot be said to establish the fact that Fortner in October, 1935 did not have in hand $3500 belonging to the appellee. The evidence offered is but another step in the process of elimination regarding the financial worth of the appellee as of October, 1935.

It will be noted that the appellee alleged under paragraph 4 of her bill of complaint that the paper writing was delivered by Fortner during his lifetime to the appellee. This fact was never proved. Default in this respect is not fatal.

The decree of the court below should be affirmed.