MARY JANNUZZIO,

*vs.*

ROBERT G. HACKETT, JAMES A. LEFEVRE and JOSEPH A. L. ERRIGO, constituting the Directors of Public Safety, and ANDREW J. KAVANAUGH, Superintendent of Public Safety of the City of Wilmington, Delaware, and HARVEY J. WADMAN, Chief of Police, and EVAN L. BARNEY, Captain of Police, City of Wilmington, Delaware.

ANTHONY PANARO, ROSE PANARO, LUCY PANARO, LENA PANARO, MARY CONNELLY, ROSE REVEILLE, JOSEPH REVEILLE, JOSEPH PANARO, and MOLLY PANARO.

*vs.*

ROBERT G. HACKETT, JAMES A. LEFEVRE and JOSEPH A. L. ERRIGO, constituting the Directors of Public Safety, and ANDREW J. KAVANAUGH, Superintendent of Public Safety of the City of Wilmington, Delaware, and HARVEY J. WADMAN, Chief of Police, and EVAN L. BARNEY, Captain of Police, City of Wilmington, Delaware.

*New Castle, August 1, 1951.*

*David B. Coxe, Jr.,* Wilmington, for plaintiffs.

*Robert V. Huber,* Assistant City Solicitor of Wilmington, for defendants.

*H. Albert Young,* Attorney General and *Januar D. Bove, Jr.,* Deputy Attorney General, *amici curiae.*

SEITZ, Chancellor: Two separate actions have here been combined for decisional purposes because they involve substantially similar legal questions.

The sole plaintiff in one action is Mary Jannuzzio, who owns certain real estate known as 222 French Street, Wilmington. The plaintiffs in the other action, Anthony Panaro, et al., own real estate known as 609 Tatnall Street, Wilmington. Defendants in both actions are the Directors and the Superintendent of Public Safety, the Chief of Police and the Captain of Police of the City of Wilmington.

In their complaints plaintiffs seek, in essence, a declaratory judgment that a recent statutory amendment known as House Bill 231 is unconstitutional[1]. Premised on the accuracy of their contention they further seek a permanent injunction preventing the defendants from proceeding under the allegedly unconstitutional amendment. House Bill 231 provides as follows:

"(a) If any Captain of Police or Chief of Police in this State finds that access to any building, apartment or place which he has reasonable cause to believe is resorted to for the purpose of gambling is barred

---

1. It amended 1935 Code Par. 4060 as amended.

by any obstruction, such as a door, window, shutter, screen, bar, or grating of unusual strength, other than what is usual in ordinary places of business, or any unnecessary number of doors, windows or obstructions, he shall order the same removed by the owner or agent of the building where such obstruction exists, and if any of the said officers cannot find either of the persons mentioned, so as to make personal service, said notice shall be posted upon the outside of the apartments and on the outside of said building, and upon the neglect to remove such obstruction for seven (7) days from the date of said order or posting of said notices, any of said officers shall cause such obstructions to be removed from such building, and the expenses of such removal shall be a lien on said building and be collected by the officer removing such obstruction in the manner in which a mechanic's lien is collected.

"(b) If, within one year after removal of said obstruction, the premises are again obstructed as above defined, the Captain of Police or Chief of Police shall have the same power of removal as provided in the preceding Section, and in addition the owner or agent when such second order of removal is given, either by personal service or by posting on the building, shall be punished by a fine of not less than Two Hundred and Fifty dollars ($250.00) nor more than Five Hundred ($500.00), and the amount of said fine shall be a lien upon said building and be collected in like manner as provided in the preceding Section. And for every subsequent obstruction as above defined, at any time within two years of the giving of the second notice, as above provided, said officers shall have the same powers as provided in the preceding Section for removing the abstractions, and the owner or agent at the time such third or subsequent order of removal is given, either by personal service or by posting on the building, shall be punished by a fine of not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00), or may be punished by imprisonment for one year, and the amount of said fine shall be a lien upon the said building, and shall be collected in like manner as above provided. Obstructions as above defined, erected more than two years after the giving of the notice of the third offense, shall be construed to be a first offense under this Section.

"Section 2. The Municipal Court for the City of Wilmington and the Courts of Common Pleas shall have jurisdiction of violations of this Section."

The defendant Barney, Captain of Police, pursuant to *Subsection (a) of House Bill* 231, gave notice to the

plaintiff Mary Jannuzzio, owner, to remove certain designated obstructions. The same was done to the plaintiff Anthony Panaro, as the agent of the 609 Tatnall Street premises.

Instead of complying, these actions were brought. Restraining orders were issued against the defendants restraining them from proceeding further until a decision on the preliminary injunction rule was rendered. Subsequently defendants filed motions to dismiss the complaints on the grounds that plaintiffs have an adequate remedy at law and the complaints fail to state a claim against defendants upon which relief can be granted. Defendants also argue in their brief that plaintiffs should be denied relief because the court will not interfere with the exercise of the discretionary power of an administrative agency and on the further ground that plaintiffs come into equity with unclean hands. Because of their concern with the matter, the Attorney General and one of his Deputies were permitted to appear as *amici curiae* in defense of the statutory amendment.

Still later plaintiffs filed in each case a motion for summary judgment on the ground that there is no genuine issue as to any material fact and plaintiffs are entitled to a judgment as a matter of law. At the argument it was agreed that defendants' motions to dismiss should also be treated as motions for summary judgment. This is, therefore, the decision on motions for summary judgment made by both sides.

Defendants first contend that the plaintiffs have an adequate remedy at law and that, in consequence, this court is without jurisdiction. This adequate remedy, say defendants, is found in the Mechanic's Lien Law which is incorporated by reference into *House Bill* 231. The *Mechanic's Lien Law* provides a method for testing the validity of a lienor's claim. Does such a provision give these plaintiffs an adequate remedy? I think not. *House*

*Bill* 231 provides certain mechanics for notice of removal of what I may call non-usual obstructions. This notice is given to owners and agents of properties reasonably believed by certain police officers to be used for gambling. If there is non-compliance after seven days, the officers "shall cause such obstruction to be removed from such building, and the expenses of such removal shall be a lien on said building and be collected by the officer removing such obstruction in the manner in which a mechanic's lien is collected."

 It is at once apparent that the provision embracing the *Mechanic's Lien Law* is directed toward the collection of the cost of removal at police direction after the owner has refused to remove such obstructions. By such time the property rights of the owner will have been invaded. In other words, the police will have removed the obstructions before there is any possibility of the *Mechanic's Lien Law* coming into operation. Thus, the *Mechanic's Lien Law* clearly does not provide these plaintiffs, prior to the invasion of their property rights, with an adequate remedy at law to test the right of the police to act under *House Bill* 231. Indeed, as I read the statute, defendants are not required to impose a lien or collect the costs, in which event the present plaintiffs would have to commence an independent action. Where is the plaintiffs' remedy under such circumstances? The mere statement of these possibilities shows that plaintiffs do not have an adequate remedy at law as that test is traditionally applied in equity.

 I see no merit to the defendants' argument that the interference here is relatively trivial and should not even be accorded protection by this court in this type of case. The implications property-wise are so great that the applicability of the constitutional guarantee should not be here measured by the amount involved.

I conclude that the provision in *House Bill* 231 authorizing a proceeding by the police under the *Mechanic's Lien*

*Law* does not provide these plaintiffs with an adequate remedy at law. This court therefore has jurisdiction of these actions.

I must next decide whether these plaintiffs come into this court with unclean hands. This necessitates an examination and summarization of the various affidavits filed by the parties. Plaintiffs' affidavits are directed largely toward showing that the plaintiffs received notice pursuant to *Section* 1 *of House Bill* 231 directing that certain changes be made in the properties; that plaintiffs are uncertain as to the meaning of certain phrases of the statute; that no hearing has been had before any justice dispensing body as to the alleged obstructions; that plaintiff Mary Jannuzzio by reason of her blindness has no knowledge or information sufficient to form a belief as to any changes which may have been made by the present tenants of 222 French Street with regard to windows, doors, etc., nor does she have any knowledge or information sufficient to form a belief with regard to the activities of the present tenant or tenants at 222 French Street.

The defendants have filed several affidavits tending to show that both premises in question have been used intermittently for a number of years for gambling purposes. They tend to show that one Columbus Jannuzzio, son of plaintiff Mary Jannuzzio, operated the property at 222 French Street. They further show that the plaintiffs Anthony Panaro and Joseph Panaro operated the property at 609 Tatnall Street.

I have not the slightest hesitancy in saying that on the basis of the undisputed facts before me in this case Columbus Jannuzzio has been conducting a gambling house at 222 French Street, and further that the plaintiffs Anthony Panaro and Joseph Panaro have been doing the same thing at 609 Tatnall Street. Indeed plaintiffs' attorney does not appear to seriously challenge the defendants' case in this regard.

■ Defendants say that plaintiffs are not entitled to relief because they come into equity with unclean hands arising out of the use of the premises for gambling purposes in violation of Delaware law. Plaintiffs must be denied relief if they come into this court with unclean hands in connection with this matter. See *Bodley v. Jones,* 30 *Del. Ch.* 480, 59 *A. 2d* 463.

■ Plaintiff Mary Jannuzzio avers, in effect, that she does not know the use to which her son was putting the premises at 222 French Street. Defendants do not contradict this statement in her affidavit but they say I should imply such knowledge because she is Columbus Jannuzzio's mother. I do not believe I am entitled to imply knowledge to the plaintiff Mary Jannuzzio for the purpose of applying the clean hands doctrine. I think that something more than the showing of a blood relationship between the plaintiff and the person violating the law must appear. This is so even assuming that the doctrine may be applied by implication. Moreover, no principal-agency relationship was shown to exist. Nor was plaintiff occupying the premises. Under these record facts I conclude that the plaintiff Mary Jannuzzio is not prevented by the clean hands doctrine from maintaining the present action. Compare 4 *A.L.R.* 61.

As to the Panaro case, defendants show that two of the plaintiffs therein were using 609 Tatnall Street as a gambling house. The record does not show that any of the other plaintiffs actually knew of the use to which the property was being put. Nor were the two named plaintiffs agents for the others. However, the action was brought in this court by Anthony Parano "in behalf of himself and other named plaintiffs."

■ I believe that the plaintiffs Anthony Panaro and Joseph Panaro are not entitled to relief in this court because they come into this court with unclean hands with respect to the very subject matter of this case, viz., the use of premises at 609 Tatnall Street for gambling purposes in

violation of law. See *City of Wink v. Griffith Amusement Co.,* 129 *Tex.* 40, 100 *S.W.* 2d 695; *Albright v. Karston,* 206 *Ark.* 307, 176 *S.W.* 2d 421; *Weiss v. Herlihy,* 23 *App. Div.* 608, 49 *N.Y.S.* 81. Since the other plaintiffs have seen fit to permit the plaintiff Anthony Panaro to bring this action on their behalf I conclude that their hands are tarred with the same brush which has soiled his hands. Legally speaking "the dirt rubbed off" when they chose to have him represent them in this court. The action by Anthony Panaro, et al., will be dismissed because plaintiffs come into this court with unclean hands.

Subsequent discussion will be concerned only with the Jannuzzio case.

 Defendants next argue that the complaint should be dismissed because this court will not interfere with the exercise of the discretionary power of an administrative agency. I have no doubt that there are many situations where this principle is applicable and I have no quarrel with the principal cases cited by counsel for defendants and *amici curiae.* However, I cannot accept defendants' argument that what is here being done is but a preliminary step in what will ultimately be a judicial proceeding. There is nothing in the first paragraph of this statute which gives plaintiff any guarantee that a judicial proceeding will necessarily take place. Moreover, we are here dealing with a judicially untested statute which is admittedly sweeping in its implications. It need hardly be said that administrative agencies must exercise their powers within constitutional limits. Citizens affected by such administrative actions are entitled to test the constitutionality of their actions at the earliest date which is compatible with the common weal.

 I conclude therefore that this is a proper time and case for this court to examine the constitutional basis for the actions of the defendants under *House Bill* 231.

The final and by far the most important issue in the case is the constitutionality of *House Bill* 231.

Plaintiffs argue, *inter alia,* that the statute is unconstitutional because it authorizes an interference with and a taking of property without providing an opportunity to be heard. This, it is said, violates the due process clause in both the United States and the Delaware Constitutions. Defendants and *amici curiae* say that the statute is constitutional because it is a reasonable exercise of the police power. They first contend that since this is a case calling for the summary exercise of the police power, there need be no hearing prior to the interference with or the seizure of the property. They say further that this very action before me provides the plaintiff with a hearing which fulfills the requirements of due process. They contend further that the mechanic's lien provision of *House Bill* 231 provides these plaintiffs with a hearing. Finally they argue that because the statute gives the Municipal Court and the Court of Common Pleas jurisdiction of violation of the statute, this court should imply that in some way or other those courts will give a hearing.

In approaching the question of the constitutionality of *House Bill* 231 I am fully mindful of the presumption of constitutionality with which the courts approach such a question. I recognize the evil here sought to be remedied and am also cognizant that, if reasonably possible, the exercise of the police power should not be interfered with unless it clearly encroaches on individual constitutional guarantees.

We are here dealing with a case arising because of action taken by the defendants under *Subsection (a)* of the statute. The plaintiff was given notice to take down certain obstructions within seven days. The parties debate at length as to whether or not *Subsection (a)* is criminal or civil. I do not believe that I need decide whether *Subsection (a)* is either or both. In any event it must, in my

opinion, still meet the due process requirement that there be an opportunity to be heard. I recognize of course that courts will, perhaps, more rigorously scrutinize a statute if it is criminal in nature, but I do not believe the quantum factor affects the present decision.

The general rule is that except in cases of over-ruling necessity, property may not be destroyed by govern-mental authority even in the exercise of its police power without providing the owner with an opportunity to be heard. See *Hoff v. State,* 9 *W. W. Harr.* 134, 197 *A.* 75. That fundamental principle is clearly recognized in *State v. Rose,* 3 *W. W. Harr,* 168, 132 *A.* 864, 869. There, the Court in Banc concluded that a Delaware statute which authorized the State to forfeit and sell an automobile used for an illegal purpose without providing for a notice or an opportunity to be heard was unconstitutional because it amounted to a taking of property without due process of law. The Court in Banc said that under the weight of authority, notice and an opportunity to be heard are essen-tial to the validity of a statute authorizing the forfeiture of an automobile used to transport liquor in violation of the law. The court went on to recognize the following exception:

"A distinction must be made, however, with respect to that class of cases which prohibit the use of property in a manner injurious to the health, morals or safety of the public, or authorize the destruction of property when necessary in order to protect the welfare of the community.

"An illustration of this is the tearing down of buildings in time of fire in order to prevent the spread thereof; or the killing of cattle infected with a contagious disease to prevent them from becoming a menace to the public health."

Defendants and *amici* say that since gambling is condemned by our Constitution and our statutes, *House Bill* 231 should be considered within the exception because it seeks to protect the public morals, i. e., a case of over-

ruling necessity. Conceding that this statute seeks to protect the public morals, I cannot agree that the accomplishment of its objective necessarily requires that it be construed to permit summary proceedings. The evil, the existence of which prompted the enactment of the statute, consists of obstructions which prevent the police from gaining swift access to structures where it is believed gambling is taking place. By preventing such swift access the violators of the law are able to prevent the police from obtaining evidence of such violations.

Keeping in mind the evil sought to be remedied, let us examine *Subsection (a)* of the statute. It provides for notice and gives the owner or agent seven days within which to remove designated obstructions. Thus the statute itself reveals that there is no overwhelming urgency as to the time of removal. In other words the owner or agent is given the first opportunity to correct the situation. This time lag plus the statutory objective demonstrate that the subject matter of the statute is not of a character which requires summary police action. Moreover, the obstructions which are embraced by the statute are not nuisances *per se.*

I conclude that the nature of the remedy provided in *House Bill* 231 is not such as to bring it within the exception which permits the summary destruction or interference with property rights.

I therefore conclude that in order to meet the requirements of the due process clause of the Delaware Constitution, *House Bill* 231 must provide the owner or agent with an opportunity for a hearing and this hearing must be available prior to the interference with or the taking of the property right. In this way an owner can then assert whatever defenses he may have. I am not impressed with the arguments as to why a hearing prior to the invasion of the property right is not feasible.

The provision conferring jurisdiction on the Municipal

Court and the Court of Common Pleas has no relevancy to a proceeding under *Subsection (a)* of the statute. A reading of the entire statute makes this perfectly clear. The provision conferring jurisdiction on the aforementioned courts does not meet the due process "hearing" requirement needed to support *Subsection (a)*.

It is also entirely clear to me that the *Mechanic's Lien Law* provision in *House Bill* 231 does not fulfill the due process hearing requirement because it does not give the owner or agent an opportunity to be heard prior to the invasion of the property right. Moreover, as heretofore stated, there is no guarantee that such a proceeding will be instituted by the police in which event the owner or agent has no day in court.

The defendants and *amici* contend finally that this very action which I am deciding gives the plaintiffs a hearing which satisfies due process. The due process "hearing" must be provided for in the statute itself either directly or by reference. Under the theory advanced by defendants and *amici* a party could never say in a judicial proceeding that the due process hearing requirement was lacking because he would be receiving his hearing when he was making his complaint. What of *State v. Rose, supra,* if this argument be sound? Need more be said?

I repeat. The due process "hearing" requirement must be provided for in the statute itself or by reference. Furthermore, when, as here, no need for summary police action is demonstrated, this opportunity must be available prior to the time when the police can interfere with such property. There is no provision in *House Bill* 231 affording this property owner an opportunity to be heard prior to such interference. In consequence, *Subsection (a) of House Bill* 231 is unconstitutional. It is unconstitutional because it violates the due process clause of the Constitution of the State of Delaware in that it authorizes the police to take or to interfere with property without

providing the owner with a prior opportunity to be heard with respect to their right to do so.

This court is not unmindful of the evil sought to be remedied by *House Bill* 231. However, if constitutional guarantees are to mean anything, they must be applied despite the social undesirability of the conduct under attack. There is an insidious temptation to gloss over constitutional guarantees in cases where an unsavory character is involved. It is in such cases that the temptation must be resisted. Then those guarantees will possess their full vigor when and if needed in the future by the citizenry to protect against the arbitrary use of governmental power.

Other constitutional objections of the plaintiff need not be here considered.

Since the defendants are proceeding against the plaintiff Mary Jannuzzio under a provision of a statute which is unconstitutional, they are acting contrary to law. It follows that plaintiff Mary Jannuzzio is entitled to a judgment permanently enjoining the defendants from removing, destroying or demolishing, or causing the plaintiff or any other person to remove, destroy or demolish any portion of the building located at 222 French Street in reliance upon *Subsection (a) of House Bill* 231.

Order on notice.